103 N.J. Super. 360 (1968)
247 A.2d 346
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT F. CULLEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 20, 1968.
Decided November 4, 1968.
*362 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. M. Gene Haeberle, assigned counsel, argued the cause for appellant.
Mr. John Harrison, Assistant County Prosecutor, argued the cause for respondent (Mr. Myron H. Gottlieb, Assistant County Prosecutor, on the brief; Mr. Martin J. Queenan, County Prosecutor, attorney).
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant Robert Cullen, together with James Moran and Joseph Baranowski, was indicted for (1) armed robbery of Larry Dinnerman at the Marion Inn in Cinnaminson Township on May 25, 1964, (2) armed robbery of Edwin Woolman, the manager of a drive-in theater in Edgewater Park, on April 6, 1964, and (3) on two counts for carrying concealed weapons during the robberies. Prior to defendant's trial Moran pleaded guilty and was sentenced to prison; Baranowski was not required to stand trial because he had been committed to a mental institution in Philadelphia. Defendant was tried on the three indictments and found guilty of the robbery and concealed weapon charge which took place in Cinnaminson Township. He was acquitted on the indictments charging him with armed robbery and carrying a concealed weapon in Edgewater Park. Following a denial of his new trial motion defendant appealed.
The paramount issue raised on appeal is whether defendant sustained prejudicial error because the prosecutor was permitted to cross-examine two state witnesses, John O'Brien and James Moran, in the presence of the jury, after the court and prosecutor had been informed that such witnesses intended to recant statements previously given by them to the police.
The record indicates that at the beginning of the trial defense counsel informed the court and prosecutor that he anticipated that "a State witness or two will recant." He *363 requested the court, in such event, to invoke the procedure suggested in State v. Guido, 40 N.J. 191, 199-200 (1963), namely, that such witnesses be examined out of the presence of the jury. The court agreed that defendant would be accorded such protection. The record further reveals that at a pretrial motion and during the course of the trial defense counsel informed the court and prosecutor that Moran would recant if called as a witness by the State.
O'Brien was subsequently called as a witness for the prosecution. He had not been named as a defendant in the indictments and had previously been convicted and sentenced to prison for committing an armed robbery in Trenton. After testifying that he was confined to State Prison and knew defendant slightly, O'Brien refused to answer all questions propounded by the prosecutor on the ground that his answers might incriminate him.
Thereafter, despite the court's previous assurance that defendant would be protected under the guidelines laid down in State v. Guido, supra, and defendant's continuing objections, the court permitted the prosecutor to cross-examine O'Brien at length in the presence of the jury. O'Brien continued to invoke his Fifth Amendment privilege. The prosecutor, through leading questions which were unanswered, clearly indicated to the jury that O'Brien had given a statement to the police in which he admitted that following the robberies he delivered a suitcase to defendant's brother-in-law to be turned over to defendant, and that the suitcase contained clothing allegedly worn by the robbers and an attache case in which the guns used in the robberies were secreted. (We also note that during colloquies between counsel and the court relating to such cross-examination the prosecutor frequently referred to O'Brien as a defendant).
Despite previous notice given to the court and the prosecutor that Moran would also recant a statement he had given to the police, the State called Moran as a witness. Moran also refused to answer questions, claiming the protection of the Fifth Amendment. Moran's refusal to testify *364 and a substantial part of the argument relating to the prosecutor's contention that Moran should be compelled to testify took place in the presence of the jury.
The practice of calling a co-defendant (Moran) as a witness where the prosecution has knowledge that the witness will claim his privilege against self-incrimination has been condemned because it operates to prejudice defendant in the eyes of the jury. See Annotation "Prosecution  Accomplice As Witness," 86 A.L.R.2d 1443, 1446-50 (1962), and see cases supplementing the Annotation in 6 Later Case Service A.L.R.2d (1966). The procedure to be followed in such a case is set forth in State v. Fournier, 91 N.J. Super. 477, 480-81 (App. Div. 1966). When the prosecutor knows or has good reason to believe that the witness will claim his privilege against self-incrimination he should inquire of the witness in advance as to whether the witness intends to testify if called and then inform the court and defense counsel of the result of his inquiry before calling upon the witness to testify in the presence of the jury. If he desires to test the witness' intent, the prosecutor should call the witness to the stand and question him out of the presence of the jury. The same procedure should be followed when the prosecutor is advised in advance that the witness intends to testify contrary to a previous statement given to the authorities. State v. Guido, supra.
Here both the court and prosecutor were notified by defense counsel at the outset of the trial that a "State witness or two" would probably recant. They were further informed specifically prior to and during the trial that Moran would probably do so. Thus, insofar as Moran is concerned the procedure set forth in Fournier should have been followed and the failure to do so visited serious prejudice on defendant.
The record does not indicate that the prosecutor had specific knowledge that O'Brien intended to rely upon his Fifth Amendment privilege when he called O'Brien as a witness. Accordingly, the court did not commit prejudicial *365 error in allowing the State to call O'Brien and to pursue his inquiry sufficiently to determine whether the witness intended to claim the privilege of immunity. However, once it was established that O'Brien intended to claim his privilege of immunity, the court committed error prejudicial to the defendant in permitting the prosecutor to continue his line of questioning, which placed before the jury innuendo evidence or inferences of evidence which the State could not get before the jury by direct testimony of the witness. State v. Dinsio, 176 Ohio St. 460, 200 N.E.2d 467, 472 (Sup. Ct. 1964).
The prosecutor's comment that O'Brien had given a statement to the police, and his leading questions, which were actually assertions of statements the witness was alleged to have made implicating defendant in the robberies, unquestionably prejudiced defendant. Moreover, by effectively bringing to the jury's attention the substance of a statement which was not in evidence, and therefore not subject to cross-examination, defendant was deprived of his fundamental rights secured by the confrontation clause of the Sixth Amendment. Robbins v. Small, III, 371 F.2d 793 (1 Cir. 1967), certiorari denied 386 U.S. 1033, 87 S.Ct. 1483, 18 L.Ed.2d 594 (1967).
The State's case against defendant was based on circumstantial evidence. The questions asked of O'Brien, if answered, clearly bore on a fundamental part of the State's case against defendant and formed a crucial link in the proof. The harmful import of O'Brien's statement, improperly brought to the attention of the jury, was substantial and no attempt was made by the trial court to eliminate the prejudice sustained by curative instructions. Indeed, if such instructions had been given it is doubtful that they would have erased from the minds of the jury the lengthy cross-examination of O'Brien.
For the reasons above expressed the judgments of conviction are reversed and the case remanded for a new trial.
*366 Because this case must be retried, it is essential that we deal with another issue raised on this appeal, namely, that the trial court erred in dismissing defendant's motion to suppress evidence without a hearing on the merits.
At the conclusion of the first trial of this case (which terminated in a mistrial) the court, apparently having concluded there was good cause to enlarge the time provided for such a motion (R.R. 3:2A-6), directed that it "be properly perfected and listed for hearing within 30 days." Thereafter, the court notified counsel it would hear argument on the motion on a specified date, and defendant submitted a pro se brief in support of the motion. On the date of the argument the court dismissed the motion without a hearing on the merits, stating that the motion came too late and was not properly perfected.
The record indicates that defendant was arrested in his Philadelphia apartment on July 23, 1964. Five days later Pennsylvania police officers searched his automobile, which was found in a garage in that city. It had been repossessed by the finance company on July 17, 1964. The police found some keys under the front seat of the car and it was later discovered that the keys would open the locks of the suitcase and attache case, hereinbefore referred to, which were in the possession of defendant's sister.
From our examination of the record it seems clear that neither defendant nor his attorney knew, until it was revealed at the trial, that defendant's repossessed automobile had been searched and the keys seized. It is also apparent that numerous unsuccessful pretrial attempts had been made by defendant and his attorney to ascertain what evidence, if any, had been seized by the police. Even during the first abortive trial, in his argument opposing defendant's request for a hearing on a motion to suppress evidence, the prosecutor said he would not reveal "anything" other than as required by a bill of particulars. (Defendant's motion for a bill of particulars was subsequently denied by the court).
*367 Under such circumstances we believe that the court erred in denying defendant's motion to suppress without granting a hearing on the merits. Accordingly, our remand shall include a direction that defendant be permitted to make a motion to suppress in advance of the impending trial. Cf. State v. Wade, 89 N.J. Super. 139, 145-147 (App. Div. 1965). We express no opinion concerning the disposition of such a motion following a hearing on the merits. However, consideration should be given to the question whether defendant had any protected interest in the privacy of the vehicle searched, once it was repossessed by the finance company.
We find it unnecessary to pass upon the other grounds of appeal raised by defendant's attorney or in defendant's pro se brief.
Reversed and remanded for a new trial.