PEOPLE *v.* BORDINE

OPINION OF THE COURT

1. CRIMINAL LAW—WITNESSES—PREJUDICIAL QUESTIONING.

Allowing the prosecutor to continue asking a witness questions prejudicial to the defendant was reversible error where the witness repeatedly invoked his privilege against self-incrimination and where the prosecutor knew that the witness would refuse to answer.

2. SEARCHES AND SEIZURES—PROBABLE CAUSE—EVIDENTIARY HEARING.

An evidentiary hearing must be held to determine whether there was probable cause for the search of defendant's automobile and seizure of marijuana where the trial court did not rule on the reasonableness of the search and seizure because of a state constitutional proviso, since declared unconstitutional, allowing the admission of illegally obtained evidence and where the defendant had been stopped for driving through a stop sign, one police officer testified that the defendant asked the police if they wanted to search his car, another officer testified that the police asked the defendant to allow a search and that the defendant consented, the

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 349–354, 360.
[2] 47 Am Jur, Searches and Seizures §§ 21–25.
[3, 4] 47 Am Jur, Searches and Seizures § 12.

defendant, while his car was being searched, allegedly dropped a plastic container filled with the marijuana to the ground, a third police officer testified that he had had a house under surveillance and that he had observed defendant leave the house shortly before his arrest with a plastic container, the container was three inches wide and was clear plastic and the observation was made from 500 to 700 feet from the defendant, and the police gave no explanation for the surveillance of the house (US Const, Am 4).

DISSENT BY FITZGERALD, J.

3. SEARCHES AND SEIZURES—WITHOUT WARRANT—PLAIN VIEW.
   *Objects falling in the plain view of a police officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence (US Const, Am 4).*

4. SEARCHES AND SEIZURES—WITHOUT WARRANT—PLAIN VIEW.
   *Marijuana dropped to the ground by the defendant after his being stopped for a traffic violation was legally seized where the marijuana was in the plain view of the police.*

Appeal from Calhoun, Ronald M. Ryan, J. Submitted Division 3 June 2, 1970, at Grand Rapids. (Docket No. 7597.) Decided December 10, 1970.

Dale Ernest Bordine was convicted of unlawful possession of marijuana. Defendant appeals. Reversed and remanded.

*Anthony M. Calderone,* for defendant on appeal.

Before: T. M. BURNS, P. J., and FITZGERALD and BYRNS,* JJ.

T. M. BURNS, P. J. Defendant, Dale Bordine, was tried and convicted of unlawful possession of marijuana MCLA § 335.153 (Stat Ann 1957 Rev § 18.1123) by a jury in Calhoun County Circuit

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Court. On March 25, 1969, he was sentenced to a term of not less than five nor more than ten years.

On May 10, 1968, the defendant was driving a car in the City of Battle Creek. He was stopped after allegedly driving through a stop sign. Apparently a traffic summons was issued after some discussion about it and then defendant's car was searched by the officer who had stopped the vehicle and by several other officers who had arrived at the scene. The officer who stopped defendant, Officer Yesh, stated that defendant asked if the officer wanted to search his car. Another officer, Officer Casterline, stated that Yesh asked defendant if he could search his car and that defendant replied in the affirmative.

Officer Blanchard, a Battle Creek Police Department Detective, testified that he had had a house at 111 Marjorie Street under surveillance a short time before the arrest and that he had observed defendant walk out of the house with a plastic container. This observation was allegedly made at a distance of 500 to 700 feet although the container was clear plastic and only three inches wide.

The officer also testified that he "had received information". No further explanation of the surveillance was given nor was any other justification given.

While the defendant's car was being searched, defendant was allegedly observed dropping an object to the ground.[1] Officer Yesh retrieved the object and gave it to Detective Blanchard. Blanchard examined the contents of the container

---

[1] It is interesting to note that although the officers claim to have had defendant's hands under observation at all times, the plastic container somehow appeared in his hand just before its being cast to the ground. This is more interesting when considered in conjunction with the defendant's conduct immediately before the discovery of the plastic container for it is agreed that defendant used both hands in getting out his driver's license and in opening the car's trunk.

and observed a plant-like substance. Subsequent analysis at the State Crime Laboratory revealed the substance to be marijuana.[2]

At trial the container was introduced as people's exhibit 2 over defendant's objection that it was inadmissible on the ground that the officer who stopped the defendant for the alleged traffic violation did not have probable cause to believe that a felony was being committed.

During the course of the trial the prosecutor asked Officer Blanchard:

"*Q.* How were you able to determine it was Mr. Bordine [the defendant] that was carrying this plastic object?

"*A.* I have known Mr. Bordine from working on other cases, on Mr. Bordine."

Defendant asked that a mistrial be granted on the ground that the remark was so highly prejudicial as to substantially influence the jury's deliberations and that it brought the jury's attention to the question of defendant's prior dealings with the law. The motion was denied.

Also in the course of the trial the people called a witness, Tionne Enos. This witness repeatedly invoked the privilege against self-incrimination and the defendant objected that the questions asked of the witness were prejudicial. We could reverse on the court's allowing the prosecutor to continue asking questions knowing that the witness would refuse to answer. See *Douglas* v. *Alabama* (1965), 380 US 415 (85 S Ct 1074, 13 L Ed 2d 934). But we are compelled to go further, to the very heart of

---

[2] A review of the record reveals that although the analysis showed that the substance was marijuana (*Cannabis sativa*), it did not show nor was there any positive assertion by the people's expert that the marijuana was not from a mature plant as it would seem is required by MCLA § 335.151(2)(f) (Stat Ann 1970 Cum Supp § 18.1121[2][f]).

the case against the defendant which is the marijuana seized by the officers.

While there was much discussion of the legality of the search and seizure in this case there was no ruling by the court on this matter. It appears that the trial court ruled that the validity of the search and seizure need not be reached because the evidence was admissible under Const 1963, art 1, § 11. We quote from page 176 of the transcript:

"*The Court:* And if the argument is that, because of the search and seizure, or the search was illegal, that any evidence derived during that illegal detention cannot be used, of course you would have a strong argument, but again, you see, you do have this other question though it was illegal search. You see, under the constitution the evidence is still admissible. Now somewhere along the line some high court may hold that our constitution is unconstitutional."

and page 177:

"I am saying this, even though it might be held the detention and search were illegal, I am not willing to do that even though it should be held; nevertheless, the evidence is admissible because of the narcotic."

The issue was decided by this Court in *People* v. *Andrews* (1970), 21 Mich App 731. In an unanimous decision written by Chief Judge LESINSKI, it was held that article 1, § 11 was in direct conflict with the Fourth Amendment of the United States Constitution and that the Supremacy Clause controls.

Since *Andrews,* this court has attempted to shed some light upon this area of search and seizure by our opinion in *People* v. *Reeves* (1970), 23 Mich App 183. Although the people did not concede that the

search was unreasonable in *Reeves,* it was manifestly so, and we reversed with an order to discharge the defendant.

Here, we are faced with a situation in which the search and seizure are perhaps not quite as clearly unreasonable as in *Reeves.* Therefore, while we reverse on the strength and for reasons stated in *Reeves,* we remand for an evidentiary hearing on the reasonableness of the search and seizure. See also *Preston* v. *United States* (1964), 376 US 364 (84 S Ct 881, 11 L Ed 2d 777); *Sibron* v. *New York* (1968), 392 US 40 (88 S Ct 1889, 20 L Ed 2d 917); see generally *Chimel* v. *California* (1969), 395 US 752 (89 S Ct 2034, 23 L Ed 2d 685).

Reversed and remanded for an evidentiary hearing, and, if it be determined that the search was reasonable, a new trial.

BYRNS, J., concurred.

FITZGERALD, J. (*dissenting*). In my view, this is a case for application of the rule set forth in *Harris* v. *United States* (1968), 390 US 234, 236 (88 S Ct 992, 993; 19 L Ed 2d 1067, 1069), relative to the "plain view" doctrine:

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

The facts in this case fall within the purview of this doctrine. See *People* v. *Meadows* (1970), 26 Mich App 675, and *People* v. *Tisi* (1970), 384 Mich 214.

I would affirm the conviction.