## PEOPLE v McNARY

1. CRIMINAL LAW—RES GESTAE WITNESS—FAILURE TO PRODUCE—IN-
STRUCTIONS TO JURY—DISCRETION.

Refusing to instruct the jury in a criminal case upon the signifi-
cance of the prosecution's failure to produce a res gestae
witness is within the trial court's discretion where the prosecu-
tion has made a showing of due diligence in attempting to
bring the witness to the trial.

2. CRIMINAL LAW—RES GESTAE WITNESS—FAILURE TO PRODUCE—EX-
CUSE—DISCRETION.

Excusing the prosecution from producing a res gestae witness
believed to be out of the jurisdiction, on a showing of due
diligence was not an abuse of discretion where police officers
had twice tried to serve the witness with a subpoena, had
checked the witness's former address, his past place of employ-
ment, and with the local post office, and where defendant had
failed to request a continuance for the purpose of locating the
witness.

3. CRIMINAL LAW—WITNESSES—FIFTH AMENDMENT PRIVILEGE—PREJU-
DICE—FAIR TRIAL.

The prosecution should be wary of calling a witness to testify
knowing that the witness will claim his Fifth Amendment
privilege, since a jury will often illogically infer guilt of the
defendant if a witness knowing the facts and connected with
the defendant refuses to testify, and it is the duty of the
prosecution to attempt to prevent such prejudicial inferences
which would jeopardize the defendant's right to a fair trial.

4. CRIMINAL LAW—WITNESSES—FIFTH AMENDMENT PRIVILEGE—PREJU-
DICE—FAIR TRIAL.

Calling a prosecution witness to testify knowing that the witness
would refuse to testify, claiming his Fifth Amendment privi-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 58 Am Jur, Witnesses § 8.
[2] 17 Am Jur 2d, Continuance §§ 7, 29.
[3, 4] 58 Am Jur, Witnesses § 84 et seq.
[5, 6] 53 Am Jur Trial §§ 1035, 1036, 1050 et seq.

lege, did not deprive the defendant of a fair trial where the witness called was in no way implicated with the crime charged, the prosecution had not asked a series of leading questions which would have resulted in an inference of guilt of the defendant, and the defense did not object to the calling of the witness or request a curative instruction to correct any improper inference the jury may have made.

5. CRIMINAL LAW—VERDICT—CLARIFICATION OF VERDICT.

The trial court may clarify the form of the jury verdict if the jury has not been discharged, and the jury may change the form and substance of the verdict prior to discharge.

6. CRIMINAL LAW—VERDICT—CLARIFICATION OF VERDICT.

Simple assault was the only crime of which defendant was clearly convicted where the jury had returned a verdict of "assault to do great bodily harm less than murder" in a trial for assault with intent to commit murder but had assented when polled on the trial judge's clarification of their verdict as "assault *without* intent to do great bodily harm less than murder", and where the defense in effect admitted the assault and focused on the lack of intent to murder and on intoxication as negating intent (MCLA 750.83, 750.84).

Appeal from Ingham, Ray C. Hotchkiss, J. Submitted Division 2 March 9, 1972, at Lansing. (Docket No. 12845.) Decided September 27, 1972. Leave to appeal granted, 388 Mich 799.

Sherman L. McNary was convicted of assault with intent to do great bodily harm less than murder. Defendant appeals. Reversed in part and remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Raymond L. Scodeller,* Prosecuting Attorney, and *James R. Ramsey,* Assistant Prosecuting Attorney, for the people.

*Savage, Frazin, Crane, Spencer & Stewart* (by *Irwin L. Frazin* and *Harvey J. Powers),* for defendant on appeal.

Before: LESINSKI, C. J., and BRONSON and TAR-
GONSKI,* JJ.

LESINSKI, C. J. The defendant was charged with
assault with intent to commit murder, MCLA
750.83; MSA 28.278. After a jury trial he was
found guilty of assault with intent to do great
bodily harm less than murder, MCLA 750.84; MSA
28.279. The trial court sentenced the defendant to
imprisonment for a term of 9-1/2 to 10 years. A
motion for new trial was denied by the trial court.
Defendant appeals as of right.

The defendant and Edward Pulido were ob-
served by off-duty Officer Gene Stout of the Lans-
ing Police Department attempting to free a vehicle
from a snow-bound parking space. Officer Stout
noticed that their actions caused property damage
to another vehicle and reported the incident to the
police. Officer Lively of the Lansing Police Depart-
ment responded and accompanied Officer Stout to
the Northside Sinclair Station in Lansing, where
Pulido and the defendant were found inside. Offi-
cer Lively placed the defendant and Pulido under
arrest for public intoxication. Because Pulido was
uncooperative, Officer Lively called for another
unit and shortly thereafter Officer Behrman of the
Lansing Police Department arrived. An altercation
ensued; Pulido took a swing at Officer Behrman,
and defendant, McNary, came at Officer Stout
with his fists. The resulting struggle involved the
defendant, Pulido, Officer Lively, Officer Behrman,
Officer Stout, and an Officer McGuire; the latter
was off-duty and happened to be on the scene.
During this fracas the defendant took Officer
Behrman's gun. There is some dispute as to
whether the defendant then pointed the gun at

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Officer Lively. Officer Stout finally took the gun away from the defendant after a struggle. The defendant was then taken into custody.

Defendant alleges several errors in this appeal. The first that we will consider is the judge's refusal to instruct the jury on the significance of the prosecution's failure to produce a res gestae witness. *People v Tiner,* 17 Mich App 18, 20–21 (1969), gives us the applicable law on this question:

"We do not consider it necessary to decide whether or not the witness was *res gestae* as asserted by the defendant since once a witness is indorsed it is the duty of the prosecution to secure his presence in court. See *People v Kern,* 6 Mich App 406 (1967). Yet, as we have noted in previous cases, the prosecution may be excused from producing that witness if it makes a showing of due diligence. *People v Kern, supra,* p 410. This question of diligence in production of indorsed witnesses is a matter within the discretion of the trial court, subject to being overturned on appeal only for clear abuse.

\* \* \*

"Here, however, the defense failed to raise this point until it made its motion for a new trial after the verdict was in. The defense made no application for a continuance; therefore, there was no error saved for appeal. *People v Gibson,* 253 Mich 476 (1931)."

Here Officer Jones, who was assigned to serve the witness Whitney with a subpoena, testified that he had talked to approximately a dozen people in attempting to locate the witness but was told that he was in Florida. The officer testified that he had checked with the former address, a past place of employment, and with the local post office in an attempt to locate this witness. Another officer testified that he had been trying to locate Whitney, to return his driver's license, for about two weeks. And after learning that the witness would

return for trial, Officer Jones again, on the day of the trial, tried to locate Whitney to serve the subpoena.

The defense also failed to request a continuance, which it should have done, had it thought the witness important.

In the instant case, the prosecuting attorney produced testimony sufficient to show due diligence in an effort to produce the *res gestae* witness. The trial court did not abuse its discretion in excusing the prosecution from presenting this witness on the above showing of due diligence. *People v Kern,* 6 Mich App 406 (1967); and *People v Ivy,* 11 Mich App 427 (1968). The defendant was not entitled to the requested instruction.

Defendant further contends that when the prosecuting attorney called Edward Pulido to the stand as the people's witness with prior knowledge of the fact that such witness would claim the Fifth Amendment privilege, the defendant was deprived of a fair trial because an impermissible and prejudicial inference of guilt arose as a result of such tactic.

During the prosecution's case in chief, in the presence of the jury, Edward Pulido was called to the stand as a witness for the people. After answering a few preliminary questions put to him by the prosecuting attorney, Pulido refused to testify and asserted his Fifth Amendment privilege. Subsequently counsel for the defendant called the prosecuting attorney to the stand. The latter testified, out of the presence of the jury, that prior to placing Pulido on the stand he had been informed by Pulido's attorney that such witness would invoke the Fifth Amendment if called as a witness for the people.

After Pulido took the stand as a witness for the

prosecution, he answered certain preliminary questions put to him by the prosecuting attorney concerning his age, his residence, and his state of employment. Subsequently the following colloquy took place between the prosecuting attorney, the witness, and the trial court:

"*Q.* * * * Do you recall the day then of December 24, 1970, sir?

"*A.* I, I refuse to answer on the grounds it may incriminate me.

"*Q.* Do you recall the date, sir? Do you understand the question?

"*A.* Yes.

"*Q.* My question was do you recall December 24, 1970?

"*A.* I refuse to answer on the grounds it may incriminate me.

"*Q.* Well, your Honor, I fail to see how the recollection of that particular date would tend to incriminate this particular witness.

"*The Court:* Well, if he desires to take the Fifth Amendment at this time in relationship to the matter, I will not instruct him to answer."

In the case at bar the witness Pulido was neither an accomplice nor a codefendant. It is clear that the defendant was acting completely alone in seizing the gun and in forming or failing to form the intention to use the gun to assault the officer with an intent to murder. The witness was in no way implicated in the crime charged. His was an independent act of resistance to the officers. His taking of the Fifth Amendment would support no logical inference of defendant's guilt.

Second, the defense did not object to the calling of Pulido as a witness, nor did it request a curative instruction to correct any improper inferences that the jury may have made. The defense must not

have felt that the defendant's position was prejudiced by the calling of this witness. The proper time to raise such an objection is not on appeal but at the trial level.

Finally, no logical inference of defendant's guilt was possible from the witness' refusal to answer a question concerning his recollection of a single date. The prosecutor asked only one question that was even remotely connected with the crime. The prosecution did not ask a series of leading questions which would result in an inference of defendant's guilt. *Sanders v United States,* 373 F2d 735 (CA 9, 1967), is distinguishable because a series of 55 questions were asked of one witness, 10 potentially incriminating questions, and these added critical weight to the prosecution's case. Also, *San Fratello v United States,* 340 F2d 560 (CA 5, 1965), is distinguishable because the question which the witness refused to answer caused an inference of the defendant's guilt. The witness was the defendant's wife and the question concerned picking up some photos from the photo supply shop—one of the overt acts of the conspiracy.

Under the specific facts of this case we find the defendant was not denied a fair trial. We would, however, caution the prosecution as to the danger of calling a witness it knows will claim his Fifth Amendment privilege. If there is some connection between the defendant and the witness, often a jury will illogically infer guilt of the defendant because of the refusal of the witness, with knowledge of the facts, to testify. It is, of course, the duty of the court and the prosecution to attempt to prevent such inferences. We would reiterate what we said in *People v Brocato,* 17 Mich App 277, 304 (1969), citing *People v DeLano,* 318 Mich 557, 569 (1947):

"Great care should be exercised by the trial court as well as the prosecuting attorney to insure that no statement be made in the presence of the jury which would jeopardize a defendant's right to a fair trial."

It is possible for the prosecution simply not to call a witness it knows will claim this Fifth Amendment privilege. If the witness is a *res gestae* witness, defense could be given the opportunity to waive his being called. This would avoid all possible chance of unfair prejudice to the defendant.

The defendant's next argument, that a 9-1/2- to 10-year sentence is a determinative sentence which conflicts with the indeterminate sentencing statute, need not be considered in light of the result we reach on the final issue.

Finally, we turn to the crucial issue in this case. Defendant contends that the jury did not find him guilty of the charge for which he was sentenced: assault with intent to do great bodily harm less than murder. He contends that the verdict is either void for vagueness or one of guilty of simple assault. This verdict is not void for vagueness, but we agree that the verdict is guilty of simple assault. He was therefore improperly sentenced for assault with intent to do great bodily harm less than murder.

The following is the entire jury verdict:

*"Deputy Clerk:* And what is your verdict?

*"Juror Dewey:* We find the defendant guilty with *assault to do great bodily harm less than murder.*

*"Deputy Clerk:* Members of the jury, listen to your verdict as recorded, you do say upon your oaths that you find the respondent, in this cause, guilty of—murder did you say?

*"The Court: Assault without intent. Assault without intent to do great bodily harm less than murder.*

*"Deputy Clerk:* In manner and form as the people

have in their information in this cause charged, so say you Mrs. Foreman?

"*Juror Dewey:* I do.

"*Deputy Clerk:* So say you all members of the jury?

"*Jurors:* I do.

"*The Court:* Please be seated.

    *(Whereupon the jury was seated.)*

"*The Court:* Any other requests, counsel?

"*Mr. Martin:* The people have none.

"*The Court:* Mr. Bossenbrook?

"*Mr. Bossenbrook:* I'd like to have the members of the jury polled.

"*The Court:* All right, please *poll the jury.*" (Emphasis supplied.)

The original statement of the foreman said nothing about intent, which was of course a specific element of this crime. This is particularly important here because the entire defense went to showing that there was no intent to murder. The defense in effect admitted the assault. The defense attorney focused on lack of intent in his opening statement, in his questioning of Officer Stout to show that the gun was never pointed at Officer Lively, and in his summation. The defense attorney also suggested a defense of intoxication as negating intent—predicated on the fact that defendant had been drinking and was being arrested for public intoxication.

It was the trial judge's duty at this point to clarify the verdict, which he did by saying "*Assault without intent.* Assault without intent to do great bodily harm less than murder". (Emphasis supplied.) To this all the jurors assented—saying it was their verdict, even when polled.

A jury verdict is not merely the first sentence uttered by the foreman when asked for the verdict. Often the verdict will have to be clarified and interpreted by either the judge or the jury until it

specifically identifies a known crime. The judge has a right to clarify the form of the verdict if the jury has not been discharged; and the jury can always change the form and the substance of the verdict to coincide with its intention, before it is discharged. *Standard Oil Co v Gonser,* 331 Mich 29 (1951). The only possible result of this colloquy between the judge and jury is a conviction of simple assault.

*People v Smith,* 14 Mich App 502 (1968), *aff'd* 383 Mich 576 (1970); and *People v Young,* 20 Mich App 211 (1969), are similar to the case at bar. In *Smith* the defendant was charged with taking indecent liberties and statutory rape. The jury found defendant guilty of "assault with intent". Defendant was sentenced for assault with intent to commit rape. The Court of Appeals modified defendant's sentence to one for simple assault. In *Smith,* p 505, the Court said:

"When the verdict of the jury has sufficient language to sustain a lesser offense, such lesser offense is the limit of the verdict that may be accepted by the court."

In *Young,* p 215, the Court said, speaking of *Smith:*

"In *People v Smith,* 14 Mich App 502 (1968), the verdict as announced by the jury had legal meaning in that the actual words used did describe a particular crime *(i.e.,* assault)."

Defendant cannot be sentenced for a crime of which the jury did not clearly find him guilty. The only crime of which defendant was clearly convicted by this jury was that of simple assault.

Affirmed in part and reversed in part. Remanded forthwith for resentencing in accord with this decision.

All concurred.