## PEOPLE v POMA

Docket No. 78-4248. Submitted January 15, 1980, at Detroit.—Decided
April 21, 1980.

William Poma was convicted of possession of marijuana with
intent to deliver, Wayne Circuit Court, Thomas Roumell, J.
Timothy Maguire, the owner of the car from which the mari-
juana was seized, was endorsed as a witness at trial. At the
conclusion of an evidentiary hearing, held outside the presence
of the jury to determine the applicability and scope of this
witness's Fifth Amendment privilege against self-incrimination,
the trial court held that Maguire did not have a privilege and
if he did he waived it. Maguire testified at trial without benefit
of counsel, where he answered questions directed to him with
the response, "I don't remember". Defendant appeals. On ap-
peal, defendant claims that the trial court erred in concluding
that the witness had waived any privilege against self-incrimi-
nation. The second issue raised on appeal is whether the
witness's on-the-stand assertion of the self-incrimination privi-
lege reversibly prejudiced defendant. *Held:*

1. The privilege against self-incrimination belongs to the
witness, not a defendant. Therefore, defendant has no standing
to complain or to challenge a court's ruling concerning a
witness and his assertion of the privilege.

2. It is inherently prejudicial to place on the stand a witness
who is intimately related to the criminal episode at issue, when
the judge and prosecutor know that he will invoke the Fifth
Amendment. Where a judge determines at an evidentiary
hearing that the intimate witness will either properly or im-
properly claim the protection against self-incrimination, he
must not allow this witness to take the stand. The trial court

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 349 *et seq.*
  81 Am Jur 2d, Witnesses §§ 34, 35.
[2] 21 Am Jur 2d, Criminal Law §§ 333 *et seq.,* 356.
[3-5, 7, 8] 21 Am Jur 2d, Criminal Law § 356.
[6] 21 Am Jur 2d, Criminal Law § 357.
  81 Am Jur 2d, Witnesses § 50.

should have been aware of the inherent prejudice of putting Maguire on the stand. Not only was a deliberate attempt to draw incriminating inferences from Maguire's evasive answers tolerated but, according to the record, was actively encouraged. Under these circumstances, it is obvious that the defendant was denied a fair trial and must be accorded a new one.

Reversed and remanded.

M. J. Kelly, P.J., concurred separately. He would reverse defendant's conviction and remand for a new trial holding that adequate grounds for reversal existed in the trial court's management of Maguire. He believes the universal rule advanced by the majority should not be adopted because it would conflict with a prosecutor's duty to produce res gestae witnesses. Where a court is obviously frustrated by a witness's answers, loss of memory, or his assertion of the Fifth Amendment privilege, a better approach would be to threaten the witness with contempt.

## Opinion of the Court

1. Criminal Law — Constitutional Law — Prosecution Witnesses — Self-Incrimination — Criminal Defendants — Standing to Claim Privilege.

A criminal defendant has no standing either to claim the privilege against self-incrimination for a prosecution witness or to complain about an error by a trial judge who overruled the witness's attempt to assert the privilege.

2. Criminal Law — Constitutional Law — Witnesses — Fifth Amendment — Self-Incrimination — Confrontation — Cross-Examination — Prejudice.

Potential prejudice results when a witness is placed on the stand and invokes the Fifth Amendment because critical weight is added to the prosecution's case where a witness who is substantially related to the criminal episode, such as an accomplice, asserts this privilege; one of the reasons for possible prejudice is that his "statement" is thus admitted without opportunity for the defendant to engage in necessary confrontation and cross-examination.

3. Criminal Law — Constitutional Law — Witnesses — Fifth Amendment — Self-Incrimination — Prejudice.

A witness's privilege against self-incrimination, whether it is valid or not, has no bearing on the prejudice that results to a defendant where that witness repeatedly asserts the Fifth Amendment privilege on the stand.

4. Criminal Law — Constitutional Law — Witnesses — Fifth Amendment — Prejudicial Inferences — Fair Trial.

   A jury will often illogically infer that a defendant is guilty where there is some connection between the defendant and a witness, with knowledge of the facts, who refuses to testify; great care should be exercised by both the trial court and the prosecution to prevent such prejudicial inferences and to preserve the defendant's right to a fair trial.

5. Criminal Law — Constitutional Law — Witnesses — Fifth Amendment — Self-Incrimination — Hearing — Privilege — Prejudice.

   A court should take protective measures to protect against undue trial prejudice where it is confronted with a potential witness who is intimately connected with the criminal episode at issue by first holding a hearing outside the jury's presence to explain the self-incrimination privilege, so the witness can make a knowledgeable choice regarding assertion, and also for the purpose of determining whether the witness has a legitimate privilege.

6. Criminal Law — Constitutional Law — Witnesses — Self-Incrimination — Comprehension of Privilege — Responsibility of a Court.

   The burden of comprehending the privilege against self-incrimination should not rest with a witness; the responsibility of informing a witness, so that he understands the privilege, rests with the court.

7. Criminal Law — Constitutional Law — Witnesses — Fifth Amendment — Self-Incrimination — Prejudice — Instructions to Jury.

   A court must proceed to determine if an intimate witness intends to assert his privilege against self-incrimination, whether validly or invalidly, at trial; if the witness is familiar with the criminal episode at issue and intends to claim the protection of the Fifth Amendment, there is really no way to prevent prejudice to the defendant absent barring that witness; a cautionary instruction that no negative inference is to be drawn from the witness's tactiturnity would be ineffectual.

Concurrence by M. J. Kelly, P.J.

8. Criminal Law — Constitutional Law — Witnesses — Fifth Amendment — Prejudice — Res Gestae Witnesses — Contempt.

   *A rule which requires a court to bar the inherently prejudicial*

*testimony of a witness, who is intimate with or was involved in the criminal episode at issue, where the judge and prosecutor know that the witness will invoke the Fifth Amendment, should not be adopted because such a rule could conflict with a prosecutor's duty to produce all res gestae witnesses.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

*Mogill, Bush, Posner, Cohen & Weiss,* for defendant.

Before: M. J. KELLY, P.J., and BRONSON and D. C. RILEY, JJ.

D. C. RILEY, J. On June 13, 1978, defendant was convicted by a jury of possession of marijuana with intent to deliver, contrary to MCL 335.341(1)(c); MSA 18.1070(41)(1)(c). He was sentenced to four years probation with the first six months to be served at the Detroit House of Correction and now appeals as of right.

The primary issue on appeal concerns the impact of a witness's privilege against self-incrimination on a defendant's right to a fair trial. Timothy Maguire, the owner of the car from which marijuana was seized, was endorsed as a witness at trial. An evidentiary hearing was held outside the presence of the jury to determine the applicability and scope of this witness's Fifth Amendment privilege against self-incrimination. The witness asserted this privilege in response to many questions relating to the car's ownership or location, his loaning of the keys, his relationship to the defendant, etc. At the conclusion of the hearing, the trial court stated that Mr. Maguire did not have a

valid Fifth Amendment privilege and that even if he did he had waived it. Similar questions were asked of the witness when he appeared without benefit of counsel at trial. He then answered many of the questions directed to him with the response, "I don't remember".

Defendant claims that the trial court erred in concluding that the witness had waived any privilege against self-incrimination. We need not address the validity of the witness's privilege since it is clear that the defendant has no standing to dispute the court's ruling. *People v St Onge,* 63 Mich App 16, 18; 233 NW2d 874 (1975). The more pertinent issue is whether the witness's attempted on-the-stand assertion of the privilege prejudiced the defendant. Although this issue was not properly framed by the defendant, we will address it since it "seriously affect[s] [the] substantial rights of the accused". *People v Jordan,* 7 Mich App 28, 32; 151 NW2d 242 (1967).

Both Federal and state courts have recognized the potential prejudice that results when a witness is placed on the stand and invokes the Fifth Amendment. See generally, Anno: *Prejudicial effect of prosecution's calling as witness, to extract claim of self-incrimination privilege, one involved in offense with which the accused is charged,* 86 ALR2d 1443. When a witness who is substantially related to the criminal episode, such as an accomplice, asserts this privilege, critical weight is added to the prosecution's case. See *Namet v United States,* 373 US 179, 187; 83 S Ct 1151; 10 L Ed 2d 278 (1963), *Commonwealth v Terenda,* 451 Pa 116; 301 A2d 625 (1973), *State v Cullen,* 103 NJ Super 360; 247 A2d 346 (1968). His "statement" is thus admitted without opportunity for the defendant to engage in necessary confrontation and cross-exam-

ination. See *Namet, supra, Terenda, supra.* See also *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968), *Pointer v Texas,* 380 US 400; 85 S Ct 1065; 13 L Ed 2d 923 (1965), *Douglas v Alabama,* 380 US 415; 85 S Ct 1074; 13 L Ed 2d 934 (1965).

Michigan has recognized the intrinsic prejudice which results from certain witnesses invoking of the Fifth Amendment, but prohibition has been limited to assertions of a *valid* privilege. In *People v Giacalone,* 399 Mich 642; 250 NW2d 492 (1977), the Supreme Court placed the protective burden on counsel's shoulders, saying:

"A lawyer may not knowingly offer inadmissible evidence or call a witness knowing that he will claim a valid privilege not to testify." *Giacalone, supra,* 645.

Subsequent cases have restated the standard as one applying to *any* privilege or have questioned the original limitation. See *People v Benton,* 402 Mich 47, 60, fn 18; 260 NW2d 77 (1977), *People v Johnson,* 83 Mich App 1, 13-14; 268 NW2d 259 (1978). See also, *People v McNary,* 43 Mich App 134, 140-141; 203 NW2d 919 (1972). We agree with the Pennsylvania Supreme Court that the validity of the witness's privilege has no bearing on the prejudice that results to defendant when that witness repeatedly asserts the Fifth Amendment privilege on the stand. See *Commonwealth v Davenport,* 453 Pa 235; 308 A2d 85 (1973).

"If there is some connection between the defendant and the witness, often a jury will illogically infer guilt of the defendant because of the refusal of the witness, with knowledge of the facts, to testify." *McNary, supra,* 140.

Great care should be exercised by both the trial court and the prosecution to prevent such inferences and to preserve a defendant's right to a fair trial. *McNary, supra, People v Brocato,* 17 Mich App 277, 304; 169 NW2d 483 (1969). When the court is confronted with a potential witness who is intimately connected with the criminal episode at issue, protective measures must be taken. The court should first hold a hearing outside the jury's presence to determine if the intimate witness has a legitimate privilege, as was done in the instant case. See *In re Vickers,* 371 Mich 114, 117; 123 NW2d 253 (1963), *People v Savard,* 73 Mich App 175, 179; 250 NW2d 565 (1977). This determination should be prefaced by an adequate explanation of the self-incrimination privilege so the witness can make a knowledgeable choice regarding assertion. See *People v Bashans,* 80 Mich App 702; 265 NW2d 170 (1978), *People v Diponio,* 48 Mich App 128; 210 NW2d 105 (1973). This was not done in the instant case. In fact, when asked if he understood the privilege, the witness commented "Nobody's explained it to me, but I can figure it out myself". We do not believe that the burden of comprehending the privilege should rest with witnesses; the responsibility of informing must be the court's.

If the court concludes that the witness has no legitimate privilege, it should consider contempt penalties or other alternate remedies against the witness. Yet, with respect to the defendant, the court must proceed to determine if the witness intends to assert that privilege, whether validly or invalidly, at trial. If the intimate witness intends to claim the protection of the Fifth Amendment at trial, there really is no way to prevent prejudice to the defendant absent barring that witness. See *McNary, supra,* 140-141. As other jurisdictions

have noted, a cautionary instruction that no negative inference is to be drawn from the witness's taciturnity is ineffectual. See *People v Paulino,* 60 App Div 2d 769; 400 NYS2d 421 (1977), *Terneda, supra, Cullen, supra.*

"The naive assumption that prejudicial effects can be overcome by instructions to the jury * * * all practicing lawyers know to be unmitigated fiction." *Bruton, supra,* 129.

We hold that it is inherently prejudicial to place a witness on the stand who is intimately related to the criminal episode at issue, when the judge and prosecutor know that he will assert the Fifth Amendment privilege. When a judge determines at the evidentiary hearing that the intimate witness will either properly or improperly claim the protection against self-incrimination, he must not allow this witness to be called to the stand.

Although the instant judge cannot be held to this specific, newly-enunciated standard, we believe that he should have been aware of the announced inherent danger and prejudice of putting such a witness on the stand. See *Namet, supra, McNary, supra, People v Bordine,* 29 Mich App 112, 114; 185 NW2d 164 (1970). See also *Johnson, supra.* Not only was a deliberate attempt to draw incriminating inferences from the witness's evasive answers tolerated by the trial court, it was actively encouraged. See *Bashans, supra.* Under these circumstances, we believe that the defendant was denied a fair trial and must be accorded a new one.

In light of the disposition of this case, defendant's other arguments need not be addressed.

Reversed and remanded for a new trial.

BRONSON, J., concurred.

M. J. KELLY, P.J. *(concurring)*. I concur in reversal but do not adopt the newly enunciated rule advocated by the majority. Adequate grounds for reversal exist in the trial court's management of this witness without resort to a universal rule which may conflict with the prosecutor's duty to produce all res gestae witnesses.

The trial court erred in its determination that witness Timothy Maguire waived his Fifth Amendment privilege by his responses to questioning at the evidentiary hearing. His testimony at that time concerned prior offenses, the people with whom he lived, when he first met defendant, and when he first learned of defendant's arrest. None of these answers could be construed as incriminating.

Moreover, an examination of the testimony which the prosecution attempted to elicit indicates that Mr. Maguire's assertion of privilege was, indeed, appropriate. The questions pertained to his ownership and the location of the car in which the contraband was found. Admission by the witness that he owned the vehicle in question, that he parked it in the plant parking lot, and that he had loaned the keys to defendant would certainly have provided a link in the chain of evidence necessary to prosecute the witness for possession of marijuana.

Once in front of the jury, the witness suffered a memory loss on many of the same matters originally the subject of his Fifth Amendment claim. When defense counsel objected to the line of questioning, the court stated that it would permit continued questioning because, "It's hurting your client". The course chosen appears to have been a

deliberate approval of an approach concededly prejudicial to the defendant. The proper procedure for the court, which was obviously frustrated by the witness's behavior, would have been to threaten the witness with contempt.