## PEOPLE v KING

Docket No. 62416. Submitted July 25, 1983, at Detroit.—Decided October 27, 1983. Leave to appeal denied, 419 Mich —.

Lorne King was charged with two counts of premeditated murder, two counts of felony murder, one count of armed robbery and one count of felony-firearm. Following a jury trial in Recorder's Court of Detroit, John H. Gillis, Jr., J., defendant was convicted on the armed robbery and felony-firearm counts, with a mistrial being granted as to the murder counts when the jury was unable to reach a verdict as to those counts. At trial, the prosecution indicated an intent to call an accomplice who had pled guilty to charges arising out of the transaction giving rise to the charges against defendant. The accomplice and his attorney indicated at an evidentiary hearing that, since the accomplice intended to move to withdraw his guilty pleas, he would exercise his privilege against self-incrimination if called and asked about matters concerning the crime. The prosecution, nevertheless, was permitted to call the accomplice to the stand over defendant's objections. The prosecution asked no questions directly concerning the crime and the accomplice never exercised his constitutional right against self-incrimination. Defendant appeals. *Held:*

1. It was error for the trial court to permit the prosecution to call the accomplice as a witness after the accomplice had indicated that he would exercise his privilege against self-incrimination even though the accomplice, when called and questioned by the prosecution, did not exercise that constitutional privilege.

2. The error in permitting the prosecution to call the accomplice to the stand cannot be said to be harmless error.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 75 Am Jur 2d, Trial §§ 195, 196.
[2] 81 Am Jur 2d, Witnesses § 52.
[3] 21A Am Jur 2d, Criminal Law § 941.
   81 Am Jur 2d, Witnesses § 63.
[4] 5 Am Jur 2d, Appeal and Error § 776.

1. ATTORNEY AND CLIENT — TRIAL — EVIDENCE — WITNESSES — PRIVILEGE.

 A lawyer may not knowingly offer inadmissible evidence or call a witness knowing that the witness will claim a valid privilege not to testify.

2. CRIMINAL LAW — CONSTITUTIONAL LAW — WITNESSES — SELF-INCRIMINATION.

 A trial court, upon determining at an evidentiary hearing that a witness at a criminal trial will claim the constitutional privilege against self-incrimination, must not allow that witness to be called to the stand.

3. CRIMINAL LAW — CONSTITUTIONAL LAW — WITNESSES — SELF-INCRIMINATION — ACCOMPLICES.

 It is error mandating reversal for a trial court to permit the prosecution to call to the stand an accomplice who has evidenced some intent to exercise his constitutional privilege against self-incrimination even where the accomplice, when called and questioned by the prosecution, does not exercise that constitutional privilege.

4. CRIMINAL LAW — APPEAL — HARMLESS ERROR.

 The standards for determining whether error is reversible or merely harmless are (1) whether the error is so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless, and (2) if not so basic, whether it is harmless beyond a reasonable doubt.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *A. George Best, II,* Assistant Prosecuting Attorney, for the people.

*Gerald S. Surowiec,* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and WAHLS and R. R. LAMB,* JJ.

PER CURIAM. The defendant was arrested in connection with a grocery store holdup on April 28, 1981, in which two persons were killed. Defen-

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

dant was charged with two counts of first-degree murder, MCL 750.316; MSA 28.548, two counts of felony murder, MCL 750.316; MSA 28.548, one count of armed robbery, MCL 750.529; MSA 28.797, and one count of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2).

The jury at trial was unable to reach a verdict on the first four counts, but found defendant guilty of the latter two.[1] On November 24, 1981, defendant was sentenced to serve 50 to 75 years for armed robbery and 2 years for felony-firearm. Defendant appeals as of right.

On appeal, defendant raises three issues. The dispositive question of the trilogy is whether the trial court erred in allowing the prosecutor to call defendant's accomplice as a witness, knowing that the witness would claim the privilege against self-incrimination as to matters concerning the alleged crimes, even though the accomplice did not in fact assert the privilege on the stand.[2] We hold that the incident unfairly prejudiced defendant's right to a fair trial and reverse for the reasons stated below.

The accomplice, Herman Noble, was arrested and charged with the defendant. Mr. Noble pled guilty to two counts of second-degree murder, one count of armed robbery and felony-firearm, as part of a plea bargain with the prosecutor. Mr. Noble was endorsed as a witness in defendant's trial over objection. However, after being endorsed, and prior

---

[1] At a subsequent retrial on the murder charges, a jury found the defendant not guilty of those charges.

[2] Defendant also raises two other issues. First, defendant contends that the evidence was insufficient to permit the magistrate at the preliminary examination to bind him over. Second, defendant argues that the evidence at trial was insufficient to find him guilty beyond a reasonable doubt. Since we reverse this case for the reasons stated, we do not pass upon the additional questions.

to sentencing, Mr. Noble sought to withdraw his plea. On the day Mr. Noble was scheduled to testify, a hearing had been scheduled on his request.

The trial judge conducted a hearing away from the jury to determine whether the prosecutor would call Mr. Noble as a witness in light of the changed circumstances. The record discloses the following discussion in pertinent part:

"*The Court:* All right. Do the people intend to call Mr. Herman Noble, who is endorsed on the information?

"*Mr. Neaton [attorney for the people]:* Yes, your Honor."

Thereafter, Mr. Noble, present with his attorney, notified the trial court that he would assert his Fifth Amendment privilege if questioned in connection with the crimes.

"*Mr. Blake [attorney for Noble]:* Your Honor, I have conferred with Mr. Noble with respect to his appearance as a witness in this case. Mr. Noble informed me that he had entered a plea of guilty before this court to a crime involved in this case. Mr. Noble informed me that subsequent to entering that plea of guilty he desired to withdraw his plea prior to sentencing and that he, in fact, wrote your Honor, as you've stated, advising you that he desires to withdraw this plea.

\* \* \*

"I've advised Mr. Noble, therefore, that his posture is that there is a possibility, should the court allow him to withdraw, that he would then proceed to trial on the crime charged. \* \* \* I've advised Mr. Noble, therefore, that should he take the stand and should the prosecution pose questions to him concerning the facts and circumstances surrounding the crime to which he faces a prospective possibility of a trial, that he has a right, your Honor, not to incriminate himself and to assert

the Fifth Amendment with respect to the crime charged. Is that correct, Mr. Noble?

"*Mr. Noble:* Yes, sir.

"*Mr. Blake:* Now, I've left it up to Mr. Noble to decide what he should do. Mr. Noble has advised me that he will, in fact, assert his Fifth Amendment privilege if questions are posed to him regarding the facts and circumstances of the crimes charged."

Over the objection of the defendant's lawyer, the trial judge allowed the prosecutor to call Mr. Noble as a witness. The judge ruled that since Mr. Noble was endorsed as a witness he could be called.

Once on the stand, Mr. Noble answered the following questions:

"*Q.* Sir, your name is Herman Noble, is that correct?

"*A.* Yes, sir.

"*Q.* How old are you?

"*A.* Twenty.

"*Q.* Do you have a sister named Kim Noble?

"*A.* Yes.

"*Q.* How old is she?

"*A.* She's 21.

"*Q.* And do you know Lorne King?

"*A.* Yes, sir.

"*Q.* And is Lorne King your sister Kim's boyfriend?

"*A.* I do not know.

"*Q.* Do you know where your sister Kim was living or staying last April of 1981?

"*A.* Yes.

"*Q.* Where was that?

"*A.* West Grand Boulevard with my mother.

"*Q.* And is that in the same building that Lorne King stayed at that time?

"*A.* I don't know if Lorne King stayed there or not.

"*Q.* You know the address of that building?

"*A.* I think it's 2318.

"*Q.* West Grand Boulevard?
"*A.* Yes.
"*Mr. Neaton [attorney for the people]:* Thank you,
That's all."

Defendant's counsel again objected and moved for a mistrial. The motion was denied. Defendant did not cross-examine Mr. Noble.

The prosecution argues that, because Mr. Noble did not assert his Fifth Amendment privilege nor testify to any fact from which the jury could infer guilt with respect to him or the defendant, the verdict should be affirmed. However, the ethical standards relating to the prosecutorial function, as well as our own decisions, compel us to reject this argument.

The Michigan Supreme Court in *People v Giacalone,* 399 Mich 642, 645; 250 NW2d 492 (1977), established the standard which this Court must apply:

"A lawyer may not knowingly offer inadmissible evidence or call a witness knowing that he will claim a valid privilege not to testify. The American Bar Association standards relating to the prosecution and defense functions provide that it is unprofessional conduct for a prosecutor or a lawyer representing a defendant
—'knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence'
—'to call a witness who he knows will claim a valid privilege not to testify, for the purpose of impressing upon the jury the fact of the claim of privilege.'" (Footnotes omitted.)

This Court has recently applied the *Giacalone* standard in several cases. While we have disagreed on its application to a defendant who calls a recalcitrant witness, compare *People v Bashans,* 80

Mich App 702; 265 NW2d 170 (1978), with *People v Squires*, 100 Mich App 672; 300 NW2d 366 (1980), *lv den* 410 Mich 919 (1981), and *People v Jerry Johnson (After Remand)*, 86 Mich App 430; 272 NW2d 672 (1978), *lv den* 406 Mich 864 (1979), as to the prosecutor, our holdings have reinforced the inveterate policy in Michigan of disfavoring convictions obtained with suspicions of prosecutorial misconduct. *People v Swindlehurst*, 120 Mich App 606; 328 NW2d 92 (1982), *lv den* 417 Mich 900 (1983); *People v Squires, supra; People v Hines,* 88 Mich App 148; 276 NW2d 550 (1979), *lv den* 406 Mich 934 (1979); *People v Savard,* 73 Mich App 175; 250 NW2d 565 (1977). This policy is particularly felicitous when a prosecutor goes through the motions of calling a witness who he knows intends to assert the Fifth Amendment privilege. See *Bashans, supra,* p 710.

In *People v Poma,* 96 Mich App 726; 294 NW2d 221 (1980), this Court spoke of the unfairness inherent in merely putting a recalcitrant witness on the stand when the witness intends to assert the privilege:

"We hold that it is inherently prejudicial to place a witness on the stand who is intimately related to the criminal episode at issue, when the judge and prosecutor know that he will assert the Fifth Amendment privilege. When a judge determines at the evidentiary hearing that the intimate witness will either properly or improperly claim the protection against self-incrimination, he must not allow this witness to be called to the stand." *Poma, supra,* p 733.

We adopt the *Poma* reasoning, although we need not apply the breadth of the *Poma* holding; it is clear that Mr. Noble had a valid privilege to assert as to the matters the prosecutor so stealthily

avoided. Mr. Noble's situation was similar to that of an accomplice in *People v Swindlehurst, supra.* There the defendant argued on appeal that it was improper for the prosecutor to comment in closing argument on the failure of the accomplice to testify on the defendant's behalf. This Court rejected the defendant's argument because of his failure to object during trial, however, as to the merits of his contention, the Court noted:

"The witness in question, one Evans, had pled guilty and was awaiting sentence at the time of this trial. The record is silent as to whether, if he had been called by either side, he would have claimed his Fifth Amendment privilege. Having in mind the possibilities of a withdrawal of his guilty plea, or a successful appellate challenge to his conviction, there is reason to believe that he would have invoked his Fifth Amendment privilege if called.

"It would have been error for either the prosecutor or defense counsel to call Evans as a witness under such circumstances. *People v Giacalone,* 399 Mich 642; 250 NW2d 492 (1977). See also *People v DeGoenaga,* 202 Mich 503; 168 NW 436 (1918)." *Swindlehurst, supra,* p 612.

Having found error in the fact that Mr. Noble was called to testify, we are unable to say that the error is harmless. The standard for harmless error consists of two questions:

(1) Was the error so offensive to the maintenance of a sound judicial system as to require reversal; and

(2) If not, was the error harmless beyond a reasonable doubt? *People v Mobley,* 390 Mich 57, 65; 210 NW2d 327 (1973). *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972).

The purpose of the first question is to "deter prosecutorial and police misconduct and to safe-

guard those individual rights which are so fundamental that the impact of their violation cannot be fully assessed". *People v Swan,* 56 Mich App 22, 32, fn 6; 223 NW2d 346 (1974), *lv den* 395 Mich 810 (1975), see also *People v Mobley, supra,* pp 65-66. As to the second element "[w]e must determine 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction', that is, whether it might have aided in convincing an otherwise undecided juror of the defendant's guilt beyond a reasonable doubt". *Swan, supra,* p 33 (footnote omitted).

The case before us fails both tests. An error deliberately injected by the prosecutor cannot be upheld. *Robinson, supra,* p 563; *People v Parks,* 98 Mich App 87; 296 NW2d 195 (1980); *People v Reese,* 86 Mich App 50; 272 NW2d 192 (1978). Moreover, it is foreseeable that absent the prejudice caused by the calling of Mr. Noble as a witness, even one juror might have voted to acquit the defendant. *Swan, supra,* p 33. *People v Norwood,* 70 Mich App 53, 57-58; 245 NW2d 170 (1976), *lv den* 397 Mich 884 (1976). The jury found the question of guilt to be a close one. They deliberated for five days, requested assistance in evaluating the evidence on at least three occasions and displayed marked uncertainty throughout the process.

When viewed in context of the entire record, we are unable to declare that the unfair prejudice brought by the calling of Mr. Noble did not contribute to or affect the result. Therefore, the error was not harmless and defendant must be retried. We reiterate the position of the Michigan Supreme Court in *People v White,* 401 Mich 482, 509-510; 257 NW2d 912 (1977), disapproving of the practice wherein the prosecution in a criminal case calls a

witness which it is under no duty to call and who it has reason to know will assert the constitutional privilege against self-incrimination, thereby adding nothing of substance to the case, for the purpose of implanting an unfair inference in the minds of the jurors. "If the witness intends to claim the protection of the Fifth Amendment at trial, there is no way to prevent prejudice to the defendant absent barring that witness." *Poma, supra,* p 732. See *People v McNary,* 43 Mich App 134, 140-141; 203 NW2d 919 (1972).

Reversed and remanded for a new trial.