PEOPLE v JOHNSON

Docket No. 26747. Submitted November 3, 1977, at Grand Rapids.—
    Decided May 8, 1978.

    Jerry L. Johnson was convicted of one count of possession with
    intent to deliver marijuana and one count of possession with
    intent to deliver phencyclidine in the Muskegon Circuit Court,
    Charles A. Larnard, Jr., J. Defendant appeals. *Held:*

        The requirement of unanimous jury agreement on a defend-
    ant's innocence of a greater charge before discussion of a lesser
    charge is permitted is coercive, unduly restrictive and results
    in reversible error.

        Reversed and remanded.

1. CRIMINAL LAW—GREATER AND LESSER CHARGES—JURY AGREEMENT
        —COERCION.

    The requirement of unanimous jury agreement on a defendant's
    innocence of a greater charge before discussion of a lesser
    charge is permitted is coercive, unduly restrictive and results
    in reversible error.

2. CRIMINAL LAW—INFORMANTS—IDENTITY—DISCLOSURE—PROSECU-
        TORS—RELEVANCE—MATERIALITY—SEARCH WARRANTS.

    A prosecutor is justified in withholding an informant's identity
    where disclosure is neither relevant nor material to a fair
    resolution of the case; therefore, the withholding of such infor-
    mation may be justified, in a trial for possession with intent to

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 185, 187.
[2] 21 Am Jur 2d, Criminal Law § 332.
    81 Am Jur 2d, Witnesses § 294.
    Accused's right to, and prosecution's privilege against, disclosure of
        identity of informer. 76 ALR2d 262.
[3] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 45, 47.
    29 Am Jur 2d, Evidence §§ 253, 260.
[4] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 46, 47.
[5] 81 Am Jur 2d, Witnesses § 49.
[6] 75 Am Jur 2d, Trial §§ 277, 643.
[7] 5 Am Jur 2d, Appeal and Error § 885.
[8] 5 Am Jur 2d, Appeal and Error §§ 882, 883.

deliver marijuana and phencyclidine, where the defendant's sole reason for requesting the production of the informant was to challenge the truth of the information supplied to the police and used to obtain a search warrant.

3. DRUGS AND NARCOTICS—APPEAL AND ERROR—EVIDENCE—CONTROLLED SUBSTANCES ACT—PROBATIVE VALUE—PREJUDICE—STATUTES.

A trial court erred by allowing evidence of a large number of tablets containing a substance not proscribed under the Controlled Substances Act in a trial for possession with intent to deliver marijuana and phencyclidine, substances proscribed under the act, where the probative value of that evidence did not outweigh the attendant prejudice to the defendant (MCL 335.301 et seq.; MSA 18.1070(1) et seq.).

4. DRUGS AND NARCOTICS—EVIDENCE—MARIJUANA PARAPHERNALIA—PHOTOGRAPHS—ADMISSIBILITY.

The admission of marijuana paraphernalia and photographs which depicted the paraphernalia was error in a trial for possession with intent to deliver marijuana and phencyclidine; generally, evidence regarding the use of marijuana does not have a sufficient nexus to a charge of possession with intent to deliver to render it admissible.

5. ATTORNEY AND CLIENT—TRIAL—WITNESSES—PRIVILEGE.

It is improper for any attorney to call a witness knowing that he will claim a valid privilege not to testify.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—THEORY OF CASE—EVIDENCE—MISSTATEMENTS OF LAW.

A defendant is entitled to an instruction on his theory of the case, provided there is evidence on the record to support that theory; a proposed instruction on the defendant's theory of the case may be refused where it contains a misstatement of the law.

7. APPEAL AND ERROR—CRIMINAL LAW—TRIAL—DIRECTED VERDICT—PRIMA FACIE CASE—ELEMENTS OF CRIME—EVIDENCE.

An appellate court tests the correctness of the denial of a motion for a directed verdict by taking the evidence presented by the prosecution in the light most favorable to the prosecution and deciding if there was any evidence upon which the trier of fact could predicate a finding of guilty; a directed verdict is precluded where a prima facie case is established by the prosecutor presenting evidence to support each element of the crime charged.

8. APPEAL AND ERROR—CRIMINAL LAW—STANDARD OF REVIEW—EVI-
    DENCE—SUFFICIENCY—JURY VERDICT OF GUILTY—REASONABLE
    DOUBT.

    The standard of appellate review to be applied in a case where
    the defendant claims there was insufficient evidence to support
    the jury verdict of guilty is: would the evidence presented by
    the prosecution justify a reasonable person in concluding that
    all elements of the crime were established beyond a reasonable
    doubt.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Gerald D. Warner,* Prosecuting Attorney, *David L. Bossenbroek,* Senior Assistant Prosecutor, and *Gerald W. Gibbs,* Assistant Prosecutor, for the people.

*Glotta, Adelman, Dinges, Davis, Middleton, Riley & Murphy, P. C.,* for defendant.

Before: R. M. MAHER, P. J., and M. F. CAVANAGH and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Defendant was convicted of one count of possession with intent to deliver marijuana and one count of possession with intent to deliver phencyclidine, in accordance with MCL 335.341(1); MSA 18.1070(41)(1). Sentenced to three years probation (the first 90 days to be spent in jail) and assessed $500 in costs, defendant appeals, raising numerous issues.

On January 16, 1975, Muskegon police officer Paul R. Lodholtz swore that an unidentified informant, who had allegedly relayed reliable information in previous undisclosed cases, had told him that he had seen a large quantity of marijuana at 2144 Apple Avenue in Muskegon. The informant had also allegedly observed two kinds of mescaline pills. On the basis of that information, a search warrant was issued.

That same day, a search was conducted. The police found 153 ounces of marijuana and 184 phencyclidine pills. A ledger book and triple beam scale were also found. Defendant's name was on the back of the scale. No mescaline was found.

Prior to trial, defense counsel argued a suppression motion. It was denied and the case was ordered to trial.

On the day of the trial, prior to the selection of the jury, defense counsel objected to the fact that all 46 proposed exhibits were exposed to view on a table in the courtroom. The trial court ordered the table removed until the jury was selected.

Prior to selection of the jury, the prosecution moved to indorse Gloria Thurkettle as a witness, arguing that she was formerly a codefendant and allegedly an occupant of 2144 Apple Avenue. Over objection by defense counsel, the trial court granted the motion.

After the jury was selected, the table with the exhibits was returned to the courtroom. Defense counsel renewed his objection to the display as prejudicial. The trial court, noting that the exhibits were covered, denied the renewed objection.

During trial, Gloria Thurkettle was called as a witness by the prosecution. She refused to testify on Fifth Amendment grounds. The trial court ordered Ms. Thurkettle imprisoned until she decided to testify, citing her behavior as contemptuous.

At the conclusion of the prosecution's case, defense counsel moved for a directed verdict. The motion was denied.

Prior to instructing the jury, the trial court noted defense counsel's objection to its refusal to give a requested instruction on nonexclusive possession of the premises at 2144 Apple Avenue,

pursuant to *People v Davenport,* 39 Mich App 252;
197 NW2d 521 (1972).

The trial court instructed the jury, in part, as
follows:

"If you find the Defendant guilty of Count I, your
foreman or forelady will state, we, the jury, find the
Defendant guilty as charged on Count I.

"If you find the Defendant not guilty on Count I, your
foreman or forelady will state, we, the jury, find the
Defendant not guilty on Count I.

"As to Count II, if you find the Defendant guilty of
Count II, your foreman or forelady will rise and state,
we, the jury, find the Defendant guilty as charged on
Count II.

"If you find the Defendant not guilty on Count II,
your foreman or forelady will rise and state, we, the
jury, find the Defendant not guilty on Count II.

"Then, if necessary you may go to the matter of a
lesser included offense.

"First possession of marijuana, and second the posses-
sion of PCP or phencyclidine.

"It is actually a matter of course that if you find the
Defendant guilty of Count I that is as far as you need to
go.

"If you find the Defendant guilty of Count II that is
as far as you need to go.

"If you find the Defendant not guilty of either one or
both Counts I and II, then you may proceed to the
lesser included offenses, and report your verdict on
those."

On appeal, defendant contends that the trial
court's instructions coerced the jury into determin-
ing defendant's guilt or innocence on the principal
charge before proceeding to consider his culpabil-
ity on lesser included offenses.

To determine the validity of defendant's conten-
tion, it is necessary to remember that coercion in
deliberation instructions may be either express or

implied and that this Court has treated the two types in wholly different manners.

The issue of express coercion was settled by *People v Ray,* 43 Mich App 45; 204 NW2d 38 (1972). In that case, the jury broke from deliberations and asked for guidance on the deliberation procedure. In response to a juror's question, "If we insist—if someone insists upon taking a vote on the first charge, do we have to keep voting on that charge?", the trial court answered, "Well you have to either keep voting on the first charge until you either all find him not guilty, or all find him guilty".

This Court reversed, explaining:

"While the trial court was certainly required to say something to the jury when it requested assistance in conducting its deliberations, the requirement of unanimous agreement on defendant's innocence of the greater charge before discussion of the lesser charges is permitted is coercive, unduly restrictive and reversible." 43 Mich App at 50.

The problem of implied coercion has been harder to solve. Initially, it must be asked whether implied coercion should be encouraged. Although one opinion, the majority in *People v Ronald L Johnson,* 74 Mich App 250; 253 NW2d 722 (1977), suggests its desirability,[1] this Court on three occa-

---

[1] "A persuasive argument has been made that trial judges should be given greater latitude when they are giving jury instructions. Wright, *Adequacy of Instructions to the Jury: I,* 53 Mich L Rev 505 (1955), Wright, *Adequacy of Instructions to the Jury: II,* 53 Mich L Rev 813 (1955), *See also,* Wright, *The Invasion of Jury: Temperature of the War,* 27 Temple L Q 137 (1953), Wright, *Instructions to the Jury: Summary Without Comment,* 1954 Wash Univ L Q 177. The heart of Wright's presentation is the conclusion that the judges' responsibility must be matched by commensurate authority; if the judges are held accountable for fully instructing the jury, then they should not be limited in ways that render such instruction impossible. 53 Mich L Rev 813, 846–847." *People v Ronald L Johnson,* 74 Mich App 250, 255–256, n 2; 253 NW2d 722 (1977).

sions has specifically discouraged impliedly coercive instructions. See *People v Embry,* 68 Mich App 667; 243 NW2d 711 (1976), *People v Waldron,* 64 Mich App 648; 236 NW2d 732 (1975), *People v Freeman,* 57 Mich App 90; 225 NW2d 171 (1974).

Any concern over implied coercion, however, must be tempered by the knowledge that due to the limitations of the spoken word, it is inevitable that some ordering of offenses will occur. One offense will always come first.

Thus, armed with the realization that no implicit coercion is an unattainable goal, but condemning the concept of implicit coercion, this Court has formulated two ways to deal with the problem.

One method is to subjectively examine instructions on a case-by-case basis to determine the potential for implicit coercion. In *People v Harmon,* 54 Mich App 393; 221 NW2d 176 (1974), the trial court instructed:

" 'If you find that he did commit the act * * * of rape * * * beyond a reasonable doubt, * * * then, he is guilty of the crime charged. *Before you can go or consider the lesser included offenses, you must first then determine that he did not commit that crime. If you consider that and find and are satisfied from your deliberations that he did not commit the crime as charged, then you can consider the lesser included offenses and only then.* That would be the assault with intent to commit rape, assault and battery, or simple assault. If you are not satisfied beyond a reasonable doubt that he committed any of those acts, then, the verdict would be not guilty.' (Emphasis added.)" 54 Mich App at 394.

This Court reversed, first noting that the prosecution "[t]acitly conced[ed] that the instruction given in this case is basically identical to that

given in *Ray"*. 54 Mich App at 395. As to the purpose of *People v Ray, supra,* this Court explained:

"*Ray* seeks to prevent those jurors opposed to a defendant's conviction on a higher charge from being coerced into voting for conviction by an instruction requiring acquittal of that higher charge before lesser offenses can even be considered. For example, if the jury is considering the charge of assault with intent to commit rape, and juror A is opposed to conviction, he may be coerced into changing his vote to guilty by the prospect that the lesser included offenses of assault and battery and simple assault will not even be considered unless all the remaining 11 jurors agree to acquit the defendant of assault with intent to commit rape." 54 Mich App at 396.

Of course, the problem occurs when the instruction does not define the phrase "acquittal of the higher charge", affirmatively (in terms of a finding of not guilty), but rather defines it negatively (in terms of not finding defendant guilty of the higher charge).[2] The negative way is thus ambiguous to the extent that it is unclear whether the jurors realize their options if they are deadlocked on the higher charge.[3]

---

[2] It is arguable that the emphasized instruction in *People v Harmon,* 54 Mich App 393, 394; 221 NW2d 176 (1974), may be read in both ways.

[3] Grano, *1976 Annual Survey of Michigan Law: Criminal Procedure,* 23 Wayne L Rev 517, 605, is not troubled by that seeming ambiguity. He writes that excess concern over ambiguous deliberation instructions:

"* * * rests on the untested assumption that jurors will interpret the instruction as absolutely precluding further discussion unless all agree to verdict on the most serious charge. Absent empirical data suggesting that nuances in jury instructions really have a practical effect, courts perhaps should be more reluctant to reverse otherwise validly obtained convictions." (Footnote omitted.)

However, since it is the defendant who receives the "benefit of the doubt" in Anglo-American jurisprudential theory, we must conclude that, "absent empirical data suggesting" that ambiguous instructions

To solve the difficulty with the ambiguous type of instruction cited above, this Court has adopted the second method alluded to earlier. Consistently, this Court has read *People v Ray, supra,* literally.[4] This procedure, aptly dubbed "a sterile 'magic language' approach" by Judge T. M. BURNS, in his dissent to *People v Ronald L Johnson, supra,* "tends to disregard the effect of improper instructions by simply scanning them for the word 'unanimous' ". 74 Mich App at 258.

We agree with the *Johnson* dissent that the "magic language approach" has not proven to be a workable test. Under its rubric[5] fall cases where the trial court did affirmatively try to avoid the possibility of coercion, *e.g., People v Morton,* 77 Mich App 240; 258 NW2d 193 (1977), *People v Don Francisco Lopez,* 65 Mich App 653; 237 NW2d 599 (1975); but, there are other cases where the "magic language" test was manipulated to reach a desired result, *e.g., People v Waldron,* 64 Mich App 648;

---

*do not* result in unwarranted implied coercion, our concern in this area remains warranted.

[4] *People v Morton,* 77 Mich App 240; 258 NW2d 193 (1977), *People v Ronald L Johnson,* 74 Mich App 250; 253 NW2d 722 (1977), *People v Shears,* 73 Mich App 683; 252 NW2d 563 (1977), *People v Jacobson,* 72 Mich App 489; 250 NW2d 105 (1976), *People v Erwin,* 70 Mich App 60; 245 NW2d 173 (1976), *People v Ross,* 69 Mich App 705; 245 NW2d 335 (1976), *People v Embry,* 68 Mich App 667; 243 NW2d 711 (1976), *People v Don Francisco Lopez,* 65 Mich App 653; 237 NW2d 599 (1975), *People v Waldron,* 64 Mich App 648; 236 NW2d 732 (1975), *People v Bankston,* 61 Mich App 275; 232 NW2d 381 (1975), *People v Walker,* 58 Mich App 519; 228 NW2d 443 (1975), *People v Britt,* 57 Mich App 375; 225 NW2d 771 (1975), *People v Szymarek,* 57 Mich App 354; 225 NW2d 765 (1975), *People v Freeman,* 57 Mich App 90; 225 NW2d 171 (1974), *People v Robert Hall,* 56 Mich App 10; 223 NW2d 340 (1974), *People v Bates,* 55 Mich App 1; 222 NW2d 6 (1974), *People v James,* 51 Mich App 777; 216 NW2d 473 (1974).

[5] It is significant to note that opinions soon began to advance the proposition that Michigan law is settled as to this issue. What is troublesome is the fact that in the first cases cited in support of the literal interpretation of *Ray, People v Robert Hall, supra, People v Bates, supra, People v James, supra,* the assailed instructions of their respective trial courts were not preserved.

236 NW2d 732 (1975), *People v Walker,* 58 Mich App 519; 228 NW2d 443 (1975). Most significantly, the test has never substantively analyzed the most common yet vexing instruction, "If you do not find defendant guilty, then you may consider lesser-included offenses".

Generally, it would be best if trial courts added an admonition, as in *People v Morton, supra,* that it is not imposing any order of deliberation on the jury. However, we need not formulate any such rule of law in this case because we find that the assailed instructions are substantially similar to those found reversibly erroneous in *People v Summers,* 73 Mich App 411; 251 NW2d 311 (1977).[6] Therefore, we reverse defendant's conviction and remand for a new trial. Accord: *People v Hurst,* 396 Mich 1, 10; 238 NW2d 6 (1976).

To avoid unnecessary errors on retrial, where

---

[6] *People v Summers,* 73 Mich App 411, 413–414, n 1; 251 NW2d 311 (1977):

"The portion of the charge objected to was:

" 'Now, I think this is the first jury case in which all of you have ever served. It may be helpful to say a word about your verdict. Of course, in a criminal case such as this in Michigan the verdict must be unanimous, all 12 of you must agree as one and a verdict is announced by the foreman of the jury, so when you retire I think it might be best first as an order of business to pick your own foreman. There are, as I stated, four possible verdicts in this case. First, of course, you must consider the primary offense of assault with intent to rob while armed, decide whether the Defendant is guilty of that or not guilty. *If you find him not guilty* of that charge, consider the included offense of attempted armed robbery, and *if you find that he is not guilty of that,* then you must consider the second included offense of felonious assault. If you find the Defendant not guilty of that, the Defendant is not guilty, but you must consider in order these three charges, the primary offense of assault with intent to commit robbery while armed. If you find him guilty of that, you need not consider the other included offenses, just that one offense.

" 'I hope that is clear, I will go over it again so it sticks in your mind. First consider the primary charge of assault with intent to commit robbery while armed. *If you find him not guilty of that,* then consider the first included offense of attempted armed robbery. *If you find him not guilty of that,* consider the second included offense of felonious assault. If he is not guilty of that, he is not guilty. I hope that is clear.' (Emphasis supplied.)"

warranted, we will consider defendant's other claims of error.

Defendant contends that the trial court improperly denied defendant's motions to quash the information, suppress the evidence, or, in the alternative, release the name of the informant who provided the police with the information used to obtain a search warrant for the defendant's residence. *People v Davis,* 72 Mich App 21; 248 NW2d 690 (1976), and *People v Kinnebrew,* 75 Mich App 81; 254 NW2d 662 (1977), dispose of defendant's argument.

Here, defendant did not claim that the informant had exculpatory evidence, as was the case in *People v Stander,* 73 Mich App 617; 251 NW2d 258 (1976), where this Court reversed the trial court's prohibition against having the informant's identity revealed. Rather, defendant's sole reason for requesting the production of the informant was to challenge the truth of the information supplied to the police and used to obtain the search warrant. Under *Davis, supra* and *Kinnebrew, supra,* the informant need not be produced under such circumstances.[7]

---

[7] It should be noted that the citations to *People v Davis,* 72 Mich App 21; 248 NW2d 690 (1976), and *People v Kinnebrew,* 75 Mich App 81; 254 NW2d 662 (1977), do not represent our unqualified endorsement of their holdings.

We remain concerned that a literal application of those decisions impinges on the appellate power of review. Under *Davis and Kinnebrew,* the trial court need only acquaint itself with the knowledge that the informant (on whose representations rests the underlying validity of the search warrant) had of the charged offense. *See People v Stander,* 73 Mich App 617; 251 NW2d 258 (1976). If the trial court finds that the informant would not testify in favor of the defendant, the informant need not be produced.

Of course, this does not solve the problem where a defendant raises the question of whether an "informant" exists at all. Unless the trial court is convinced that the affiant is lying, *People v Kinnebrew, supra,* at 88, it will deny the request for production.

Our standard of review of the trial court's verdict in that type of

Defendant also argues that the trial court erred by allowing into evidence a large number of tablets containing ephedrine, a substance not proscribed under the Controlled Substances Act, MCL 335.301 *et seq.;* MSA 18.1070(1) *et seq.* With this contention, we agree.

Without passing directly on the issue of whether the evidence constitutes proper "similar acts" testimony, it is sufficient to note that the probative value of the evidence does not outweigh the attendant prejudice to defendant. *People v McCarver,* 72 Mich App 311, 318–319; 249 NW2d 403 (1976). See generally, *People v Wilkins,* 82 Mich App 260; 266 NW2d 781 (1978).

Similarly, the admission of marijuana paraphernalia and photographs which depicted the paraphernalia was error on the part of the trial court. Generally, evidence regarding the use of marijuana does not have a sufficient nexus to a charge of possession with intent to deliver to render it admissible. As noted in *Wilkins, supra,* at n 4:

"The result of admitting such evidence without the requisite connection with the charged offense is to admit precisely the kind of evidence condemned in the cases quoted at the beginning of this discussion, *i.e.,* evidence relevant only to the defendant's propensity to commit the offense. McCormick, Evidence (2d ed), § 190, at 453, Stone, *The Rule of Exclusion of Similar Fact Evidence: America,* 51 Harv L Rev 988, 1007 (1938)."

The prosecution did not make the required showing of "special circumstances of the prior bad

one-on-one credibility battle is the familiar abuse-of-discretion test. If, under that standard, we give weight to the trial court in matters of credibility, in effect, we relinquish our function of review to the trial court. If we do not force the trial court to create a record comprised of more than its subjective reaction to the testimony of both sides, we tacitly accede to whatever decision it makes.

act which tend to prove [defendant's motive, intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing· an act.]" *People v Wilkins, supra,* 82 Mich App at 267.

Defendant's other objections as to the admissibility of certain exhibits are without merit.[8]

Defendant also complains that the trial court erred by allowing the jury to observe the prosecution's proposed exhibits—particularly a large quantity of orange tablets later ruled inadmissible —before a determination as to their admissibility had been made. On retrial, the trial court is directed to *People v Brisco,* 15 Mich App 428, 429; 166 NW2d 475 (1968), where this Court concluded:

> "[i]t has been ruled in Michigan that evidence exhibited to the jury but not offered or introduced is to all intents and purposes considered as evidence. *People v Rozewicz,* 228 Mich 231 [199 NW 632 (1924)]. Also, see 46 ALR2d 1423. The use of evidence in court inadmissible by direct offer, cannot be condoned—entry through the back door cannot be allowed where entry through the front door has been refused."

In this case, the prejudice to defendant is obvious. See *People v McCarver, supra.*

Defendant additionally contends that he was denied a fair trial when the prosecutor called defendant's former codefendant who then refused to testify, on Fifth Amendment grounds. As noted

---

[8] The substance which appeared to be marijuana, despite the fact that it was never chemically analyzed, may be admitted if qualified in the same manner as at the first trial, *People v Kirchoff,* 74 Mich App 641, 647; 254 NW2d 793 (1977).

The photographs of the narcotics were cumulative at the first trial but their admissibility is nevertheless subject to the discretion of the trial court. *People v Spillman,* 399 Mich 313; 249 NW2d 73 (1976), *People v Ebejer,* 66 Mich App 333; 239 NW2d 604 (1976), *People v Ranes,* 58 Mich App 268; 227 NW2d 312 (1975).

earlier, the trial court found no basis for a Fifth Amendment claim, and, in fact, ordered her imprisoned until she decided to testify.

We do not reach the merits of this issue except as it relates to a retrial. In *People v Giacalone,* 399 Mich 642; 250 NW2d 492 (1977), the Supreme Court held it improper for any attorney to call a witness knowing that the witness will claim a *valid* privilege not to testify. We will not decide the validity of Ms. Thurkettle's privilege in dictum; we certainly will not extend the holding of *People v Giacalone, supra,* to *all* claims of privilege, in dictum. However, we assume that the prosecutor's decision regarding the necessity of Ms. Thurkettle's testimony on retrial will be made with *People v Giacalone, supra,* in mind.

Defendant's contention that the charge of possession with intent to deliver a controlled substance should be reduced to mere possession because the intent element was based on "an inference on an inference" is without merit.[9]

Defendant further complains that the trial court committed reversible error by refusing to give a requested instruction on non-exclusive possession of the premises. Defendant requested that the following instruction be given:

"I charge you that mere residency, standing alone, is not sufficient to prove possession of all the articles within the residence unless use and access to the premises is exclusive and undivided. Where more than one person has access to a residence, there must be facts which show the possession of the articles therein on an individual basis."

---

[9] The "intent" element was based not on the fact that defendant resided where the drugs were found and the inference that defendant therefore possessed them but rather that the *quantity* of narcotics involved allowed for the inference that defendant intended to deliver them. *People v Mumford,* 60 Mich App 279; 230 NW2d 395 (1975).

The trial court denied the request.

It is evident that the requested instruction, particularly the first sentence, is a misstatement of law. As such, the trial court did not err by refusing to so charge.

However, defendant argues that his theory of the case was embodied in the requested charge. Therefore, defendant contends that failure to give defendant's theory constitutes reversible error.

We acknowledge with approval the long line of Michigan cases that hold that a defendant is entitled to an instruction on his theory of the case, provided there is evidence on the record to support that theory. See *e.g., People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), *People v Cummins,* 47 Mich 334; 11 NW 184 (1882). However, we decline to extend that line of reasoning to this case for two reasons.

First, trial courts need not be required to divine from requests for incorrect legal instructions that, in actuality, the defendant really wished to have his theory of the case presented to the jury. It is not too much to have a defendant's trial counsel make a proper request, given the stringent requirements imposed upon trial courts to grant such requests. Second, to give the instruction as requested by defense counsel would, in effect, give the defense theory the imprimatur of law. Clearly, neither the prosecution nor the defendant should be given an advantage by the way the request for a theory-of-the-case instruction is phrased. The trial court did not err by refusing defendant's proposed instruction—even if it is treated as a request for an instruction on defendant's theory.

Finally, defendant argues that the trial court erred by denying his motion for a directed verdict at the close of the prosecutor's case, and that there

was insufficient evidence to support the verdict of guilty. We will treat each contention separately, as a resolution in defendant's favor as to the first contention would bar a retrial. *People v Killingsworth,* 80 Mich App 45, 51–52; 263 NW2d 278 (1977).

In *People v Garcia,* 398 Mich 250, 256; 247 NW2d 547 (1976), the Supreme Court set forth the test to be used in reviewing a claim that a directed verdict was improperly refused:

> "An appellate court tests the correctness of the denial of such motion by taking the evidence *presented by the prosecution* in the light most favorable to the prosecution and deciding if there was any evidence upon which the trier of fact could predicate a finding of guilty of murder in the first degree. *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975). *People v Abernathy,* 253 Mich 583; 235 NW 261 (1931). To the extent that the case of *People v Qualls,* 9 Mich App 689; 158 NW2d 60 (1968), holds to the contrary, it is expressly overruled." (Emphasis in original.)

Applying the *Garcia* standard here, we find that the trial court properly denied the motion. The prosecution presented evidence tending to prove that defendant (1) unlawfully possessed a controlled substance with (2) intent to deliver it. *People v Mumford,* 60 Mich App 279; 230 NW2d 395 (1975).

First, a police officer testified that he found a large quantity of illegal drugs (including marijuana and PCP) in a house which the defendant rented and resided in. Second, the extremely large quantity of drugs created a reasonable inference that defendant intended to sell at least some of them to other parties. *People v Kirchoff,* 74 Mich App 641; 254 NW2d 793 (1977). Therefore, since the prosecutor presented evidence to support each

element of the crime charged, a prima facie case was established, sufficient to preclude a directed verdict.

We need not reach the sufficiency question as we find that a new trial is unavoidable. However, since defendant's strategy seems to rely on the oft-quoted notation in *People v Davenport, supra,* regarding the prosecution's burden in circumstantial evidence cases,[10] we will discuss the issue in terms of the standard this Court will apply in sufficiency of evidence cases.

In *People v Edgar,* 75 Mich App 467, 470–474; 255 NW2d 648 (1977), this Court discussed, at length, the problems engendered by a literal interpretation of *Davenport.* It noted:

"* * * for reasons outlined below, we decline to apply the *[Davenport]* test literally.

"First, we believe that the implied distrust of circumstantial evidence is not warranted. Whether the evidence is 'direct' or 'circumstantial', we would not allow a conviction if we felt that the evidence was not sufficient to prove guilt beyond a reasonable doubt. To the extent that the rule requires the prosecution to disprove all negative theories, the test could never be met, even by direct evidence. Even with eye-witness testimony there are always innocent theories which are not specifically disproven. There will always be a chance that an eye-witness is honestly mistaken about identification.

"Second, there is a tendency to classify evidence as 'direct' if the desired inference is compelling and to call it 'circumstantial' if the inference is merely the most likely of several alternatives. One consequence is that the *Davenport* rule is not applied in all circumstantial evidence cases." 75 Mich App at 472.

---

[10] "[W]here the people's case is based on circumstantial evidence, the prosecution must negate every reasonable theory consistent with defendant's innocence of the crime charged." *People v Davenport,* 39 Mich App 252, 257–258; 197 NW2d 521 (1972).

After further discussion, this Court concluded that:

"* * * the [Davenport] rule is defective to the extent that it treats circumstantial evidence differently than direct evidence and to the extent that it requires the prosecution to *specifically* disprove all innocent theories. It should be sufficient if the prosecution proves its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defense may produce." (Emphasis in original.) 75 Mich App at 473–474.

We agree with the direction of *Edgar's* criticism of the *Davenport* test. Therefore, defendant's trial strategy should be formulated, acknowledging the following standard of appellate review: Would the evidence presented by the prosecution justify a reasonable person in concluding that all elements of the crime were established beyond a reasonable doubt?

As noted earlier, because of reversibly erroneous jury instructions, this case must be reversed and remanded for a new trial.

Reversed and remanded.