*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 4, 2021

Plaintiff-Appellee,

v

No. 349880
Wayne Circuit Court
LC No. 15-009000-01-FC

DWIGHT LEMAR YOUNG,

Defendant-Appellant.

Before: FORT HOOD, P.J., and CAVANAGH and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of possession with intent to deliver 1,000 or more grams of cocaine, MCL 333.7401(2)(a)(i), and possession of a firearm during the commission of a felony, MCL 750.227b. At sentencing, the trial court departed downward from the sentencing guidelines recommended minimum sentence range of 108 to 180 months for the cocaine conviction and sentenced defendant to 7 to 20 years' imprisonment for that conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction. We affirm.

Defendant's convictions arise from the discovery of cocaine and firearms during the execution of a search warrant at his Detroit and Warren houses on August 28, 2015. The prosecution presented evidence that Detroit Police Officer William Morrison conducted an investigation that led to defendant's arrest after a confidential informant reported that narcotics were being sold from a house on Wilshire Drive in Detroit. Defendant owned the Wilshire house and was observed using keys to enter the house, which a narcotics officer described as a stash house. Defendant and his wife lived at a different residence on Shirley Avenue in Warren. During the search of the Wilshire house, the officers found nearly 2,000 grams of cocaine, marijuana, narcotics-packaging materials, and firearms. Inside the Warren house, the police found more than $100,000 in cash, and firearms. At trial, the defense denied that defendant possessed the drugs and firearms found at the Wilshire house, or had any knowledge that drugs and firearms were stored there. A defense witness, who lived next door to the Wilshire house, testified that another man, Wayne, had keys to the house, was frequently at the house after defendant moved out of the house, and was watching the house while defendant was trying to sell it.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecution failed to present sufficient evidence to support his convictions. We disagree. We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, we must view the evidence in a light most favorable to the prosecution and determine whether a rational tier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## A. POSSESSION OF COCAINE

For a conviction of possession with intent to deliver 1,000 or more grams of cocaine, the prosecutor must prove the following elements beyond a reasonable doubt: (1) that the recovered substance was cocaine; (2) that the cocaine was in a mixture weighing 1,000 grams or more; (3) that the defendant was not authorized to possess the cocaine; and (4) that the defendant knowingly possessed the cocaine with the intent to deliver. MCL 333.7401(2)(a)(*i*); *People v Wolfe*, 440 Mich 508, 516-517; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Defendant argues that there was no evidence that he possessed any of the drugs found in the house, and no evidence that he delivered any cocaine.

To establish possession, proof of physical possession is unnecessary. *People v Konrad*, 449 Mich 263, 271; 536 NW2d 517 (1995). Possession of a controlled substance may be either actual or constructive, and may be joint as well as exclusive. *Wolfe*, 440 Mich at 519-520. Because defendant was not found in physical possession of the cocaine discovered during the search, the prosecution's theory at trial was that defendant had constructive possession of the cocaine. Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband. *Id*. at 520. A person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession. *Id*. Instead, some additional connection between the defendant and the contraband must be shown. *Id*. "The essential question is whether the defendant had dominion or control over the controlled substance." *Konrad*, 449 Mich at 271. Possession can be proven by circumstantial evidence and reasonable inferences arising from the evidence, and is a factual question for the jury. *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011); *People v Fetterley*, 229 Mich App 511, 515; 583 NW2d 199 (1998).

Viewed in a light most favorable to the prosecution, the totality of the circumstances established a sufficient nexus between defendant and the contraband discovered in the Wilshire house. There was evidence that enabled a jury to reasonably infer that defendant had control over the premises, and that no other person resided in or had dominion or control over the Wilshire house. The defense did not dispute that, although defendant no longer resided at the Wilshire house, he owned the property. On both days of the preraid surveillance, August 26 and 27, 2015, defendant was observed using keys to enter the house, letting individuals into the house who left soon thereafter, and then leaving the house. In addition to defendant using keys to freely enter the house, two of defendant's vehicles were parked on the property—one in the driveway and one in

the backyard—on both days of preraid surveillance and on the day of the search, August 28. On the day of the search, defendant was arrested at his residence in Warren and no one was present at the Wilshire house. The inside of the Wilshire house showed no signs of occupancy. It was dusty, did not contain any food, and the furniture was covered. In sum, the evidence showed that defendant was an owner of the Wilshire house, he was seen entering and leaving the house with keys, defendant had vehicles at the property, and there were no tenants or signs of occupancy. Although defendant's witness claimed that someone named "Wayne" regularly came to check on the property, she also testified that defendant came to the house periodically.

The reasonable inferences arising from this evidence, considered together, were sufficient to establish a nexus between defendant and the Wilshire house to enable the jury to find beyond a reasonable doubt that defendant had dominion and control of the cocaine at the Wilshire house. Defendant's challenges, including his reliance on the weight and credibility of his defense witness's testimony, do not affect the sufficiency of the evidence. *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977). Indeed, these same challenges were presented to the trier of fact during trial. The jury was free to believe or disbelieve all or any portion of the trial testimony in light of the issues explored by the defense. This Court will not interfere with the jury's role of determining issues of weight and credibility. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Further, this Court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict. *Nowack*, 462 Mich at 400. There was sufficient evidence that defendant possessed the drugs found in the house.

## B. INTENT TO DELIVER

To show intent to deliver, proof of actual delivery is not required. *Wolfe*, 440 Mich at 524. "Intent to deliver has been inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *Id*. Circumstantial evidence and reasonable inferences arising from the evidence are sufficient to establish intent to deliver. *Fetterley*, 229 Mich App at 515.

There was evidence that a confidential informant told the police that drugs were being sold out of the Wilshire house. Subsequently, Officer Morrison observed defendant and a known drug dealer both enter the Wilshire house, and the known drug dealer reemerged carrying a bag, which he put in his car before leaving. Two days later, the police confiscated 1,997.1 grams of cocaine in the form of a compressed brick and chunks in a Ziploc bag. A narcotics officer explained that the "kilo" brick was worth $35,000 to $40,000 in 2015, and the value increases by "a couple hundred thousand dollars" when broken down and sold. The officers also confiscated a small press, Saran wrap, and a hammer, which a narcotics officer explained is consistent with what drug dealers use to repress cocaine and heroin into bricks. An officer also found a digital scale, a Pyrex glass bowl, and a metallic or stainless-steel press. A narcotics officer explained that digital scales are commonly used to weigh narcotics, the press is commonly used for re-rocking or shaping narcotics, and the Pyrex bowl is used for mixing items. At defendant's Warren residence, the police found more than 100,000 in assorted bills. Viewed in a light most favorable to the prosecution, the circumstantial evidence was sufficient to establish that the cocaine was intended for delivery, as opposed to personal use. There was sufficient evidence to sustain defendant's conviction of possession with intent to deliver 1,000 or more grams of cocaine.

## C. FELONY-FIREARM

"The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999); see also MCL 750.227b. As with drug offenses, possession of a firearm may be actual or constructive. *People v Johnson*, 293 Mich App at 83.

> A person has constructive possession if there is proximity to the article, together with indicia of control. Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant. [*Id*. (quotations and citations omitted).]

With respect to possession and felony-firearm, the time of the offense or felony is what controls, not the time of the arrest or search. *People v Burgenmeyer*, 461 Mich 431, 439; 606 NW2d 645 (2000). When possession of a controlled substance is the underlying felony, the offense may take place over an extended period of time, during which the defendant is variously in proximity to the firearm and at a distance from the weapon. *Id*.

The same evidence and reasoning that supports that defendant constructively possessed the cocaine also supports a sufficient nexus between defendant and the firearms discovered in the Wilshire house. Again, viewed in a light most favorable to the prosecution, the evidence showed that defendant had exclusive control over the premises where both the cocaine and firearms were found. The circumstantial evidence that both cocaine and firearms were found in the Wilshire house is sufficient to enable a jury to infer that defendant possessed a firearm at the time he committed the offense of possession with intent to deliver 1,000 or more grams of cocaine. *Fetterley*, 229 Mich App at 515. Accordingly, viewed in a light most favorable to the prosecution, the evidence was sufficient to sustain defendant's felony-firearm conviction.[1]

## II. JURY VERDICT

Next, defendant argues that the trial court compromised defendant's right to a jury trial when, after the jury announced its verdict, the court noticed that the jury had marked both boxes for the alternative counts and instructed the jury to prepare a new verdict form. We reject this claim of error.

Defendant was charged with alternative counts of possession with intent to deliver 1,000 or more grams of cocaine and possession of 1,000 or more grams of cocaine in Counts 1 and 2, respectively. The jury verdict form consisted of three pages. As relevant here, the first page was dedicated to the alternative cocaine counts. As relevant to this issue, the trial court instructed the jury on the choices provided on the verdict form for the alternative counts as follows:

> The defendant is charged with one wrongful act in alternative counts. That is, that he is guilty of Count 1, unlawful possession with intent to deliver a

---

[1] In addition, as already explained, the evidence was sufficient to establish the underlying felony of possession with intent to deliver 1,000 or more grams of cocaine.

controlled substance, cocaine; that's Count 1. Or Count 2, possession of a controlled substance, cocaine. But not both.

You should consider these alternatives separately in light of all the evidence. You may find the defendant not guilty or guilty of unlawful possession of cocaine with intent to deliver, or guilty or not guilty of possession of a controlled substance.

Now, the way that you can handle that—you can handle it any way you want to—is you will see on your verdict form that the Court has Counts 1 and 2. And I have an instruction on that verdict form, it's one page. It says mark only one box on this page, and it means just that, mark only one box. If you do that, then you won't have any difficulty with this extra instruction.

When the jury returned to the courtroom to give its verdict, the following exchange occurred:

*Jury foreperson*: Page one? Count 1, guilty.

*The court*: Guilty of what?

*Jury foreperson*: Possession to deliver cocaine for 1,000 or more grams.

Thereafter, the trial court asked for and reviewed the jury's verdict form. After the court realized that the jury had marked guilty verdicts for both alternative counts, it instructed the jury as follows:

Give me a fresh verdict form [for page one]. And I'm going to ask you to follow the instructions on that page where it says mark only one box. And on this form you've marked more than one. So I'm going to send you back to the jury room and on the fresh form mark only one box on that page. Okay? Whatever that box is.

Minutes later, court resumed with the jury present, and the jury foreperson stated the verdict for page one as follows:

Count 1, controlled substance, possession with intent to deliver cocaine, 1,000 or more grams, we find the defendant guilty.

Defendant now argues that the jury's verdict was confusing and "could indicate" that there was some disagreement about the verdict. An uncertain jury verdict may provide grounds for relief. *People v Ullah*, 216 Mich App 669, 683; 550 NW2d 568 (1996). However, a jury's verdict is not void for uncertainty where the jury's intent can clearly be deduced from the record. *People v Rand*, 397 Mich 638, 643; 247 NW2d 508 (1976).

While the jury apparently made an error when preparing page one of the verdict form, the jury's intent to convict defendant of Count 1, possession with intent to deliver 1,000 or more grams of cocaine, can clearly be deduced from the record. Again, before the trial court looked at the

verdict form, the jury foreperson had already announced the jury's verdict on the alternative counts, specifically stating: "Count 1, guilty" of "Possession to deliver cocaine for 1,000 or more grams." After discovering that the jury "had marked guilty on Count 1 and then on Count 2 they had put an X in the box for guilty and then they put an X over the whole thing," the trial court provided the jury with a "fresh" verdict form and instructed it to resume deliberations in order to mark only one box on page one, "Whatever that box is." Minutes later, the jury returned and the foreperson again announced the jury's verdict on the alternative counts: "Count 1, controlled substance, possession with intent to deliver cocaine, 1,000 or more grams, we find the defendant guilty." The final jury verdict form reflects this verdict, as only one box—the box for possession with intent to deliver cocaine, 1,000 or more grams—is marked. Despite the apparent error in originally preparing the jury verdict form, there is no indication that the jury was confused about their verdict, which was twice announced and reflected on the final verdict form. "The judge has a right to clarify the form of the verdict if the jury has not been discharged; and the jury can always change the form and the substance of the verdict to coincide with its intention, before it is discharged." People v McNary, 43 Mich App 134, 143; 203 NW2d 919, 924, aff'd in relevant part, rev'd in part on other grounds, 388 Mich 799; 201 NW2d 845 (1972). While defendant relies on the discrepancy with the initial verdict form as an indication that the jury was not in agreement, he has not indicated that any juror gave any indication that the verdict was not his or her decision. Again, the jurors were individually polled and each agreed with the verdict. Thus, the record belies defendant's claim that the verdict was not unanimous. Viewing the record in its entirety, as opposed to focusing only on the error in the initial verdict form, we find no error in the trial court's jury instructions and no ambiguity in the jury's verdict. Therefore, we reject this claim or error.

## III.  PROSECUTORIAL MISCONDUCT

Defendant argues that he is entitled to a new trial because the prosecutor engaged in misconduct by making improper remarks and arguments during closing and rebuttal arguments. We disagree. Defendant preserved his claims that the prosecutor made an improper civic duty argument and argued facts not in evidence by stating that "he's cutting the lawn." As defendant acknowledges, however, he did not object to the remaining claims of prosecutorial misconduct, leaving them unpreserved.

We review preserved claims of prosecutorial misconduct case by case, reviewing the challenged conduct in context to determine whether the defendant received a fair and impartial trial. *People v Brown*, 294 Mich App 377, 382-383; 811 NW2d 531 (2011). Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting defendant's substantial rights. *Id*. at 382. We will not reverse if the alleged prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

Prosecutors have great latitude when arguing at trial. *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010). They may argue the evidence and all reasonable inferences that arise from the evidence in relationship to their theory of the case, and they need not state their inferences in the blandest possible language. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995); *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007).

### A.  PRESERVED CLAIMS

## 1. CIVIC DUTY ARGUMENT

Defendant argues that the prosecutor made an improper civic duty argument by stating during rebuttal argument: "And in this case justice requires for you to find the defendant guilty as charged because he is guilty." "The prosecutor may not inject issues into a trial that are broader than the defendant's guilt or innocence. The prosecutor commits misconduct when he or she invites jurors to suspend their powers of judgment and decide the case on the basis of sympathy or civic duty." *People v Lane*, 308 Mich App 38, 66; 862 NW2d 446 (2014).

Viewed in context, the prosecutor was not asking the jurors to suspend their powers of judgment and convict defendant as part of their civic duty. Before making the "justice" commentary, the prosecutor asked the jurors to review the evidence and follow the trial court's instructions regarding the law. The prosecutor then argued that, after considering the evidence and the law, justice would require a guilty verdict. Thus, the prosecutor was not urging the jury to convict defendant as a measure of justice, but because the evidence and the applicable law established defendant's guilt. Accordingly, the prosecutor did not make an improper civic duty argument.

## 2. ARGUING FACTS NOT IN EVIDENCE

Defendant also argues that the prosecutor argued facts not in evidence by stating during closing argument that defendant "was cutting the lawn" at the Wilshire house. Defendant asserts that there was no evidence that he cut the grass at the Wilshire house. Prosecutors may not make a statement of fact that is unsupported by the evidence, but they may argue reasonable inferences arising from the evidence to the extent that the inferences relate to the prosecutor's theory of the case. *Dobek*, 274 Mich App at 66 (citations omitted). During trial, there was evidence that defendant was the owner of the Wilshire house, and neither defendant nor a tenant was living at the house. There was also testimony describing the outside of the property as "well kept" and that the "grass was taken care of." Although there was no direct evidence that defendant cut the lawn, the evidence supported a reasonable inference that because defendant was the owner and the lawn was maintained, he was the person who either cut the lawn or arranged for lawncare. The inference from the evidence that defendant "was cutting the lawn" relates to the prosecutor's theory that defendant had dominion and control over the Wilshire house, where the cocaine and firearms were found. Accordingly, viewed in context, the prosecutor's comment was not improper.

## B. UNPRESERVED CLAIMS

## 1. IMPROPER VOUCHING FOR OFFICER MORRISON

Defendant argues that the prosecutor improperly vouched for Officer Morrison's credibility when he made the following comments during closing argument:

> And then he saw another person who comes up who he knew, based on his experience, nine years of working in narcotics, who he knew was involved also in drugs. He knew this person was a drug dealer. And that person went into the house.

\* \* \*

And then for the stash house, we have these people coming and going. And we know that for sure one is a dealer because Officer Morrison knows this person.

Defendant argues that the prosecutor continued to improperly vouch for the officer during rebuttal argument when he remarked: "And Officer Morrison did see things which he put into—inside the search warrant."

Improper vouching occurs when the prosecutor vouches for the credibility of a witness by conveying that the government has some special knowledge of which the jury is unaware that the witness testified truthfully. See *Bahoda*, 448 Mich at 276, and *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). Viewed in context, the prosecutor's remarks did not constitute improper vouching, but rather were based on and supported by the evidence presented during trial, specifically the testimony of Officer Morrison. The prosecutor's references to the officer's testimony, including that the officer knew that the man he saw defendant let into the house was a drug dealer and that the officer put things that he observed in the search warrant, were merely summarizing some of the facts presented during trial. The prosecutor used this factual summary as part of a proper argument explaining why the evidence supported the charged offenses. The prosecutor did not suggest that he had some special knowledge that the officer was credible, beyond the evidence presented at trial. Nor has defendant demonstrated that the remarks affected the trial's outcome because the prosecutor was simply reminding the jury of the testimony they had already heard from Officer Morrison. The prosecutor's remarks were not clearly improper.

## 2. ARGUING FACTS NOT IN EVIDENCE

Defendant again takes issue with the prosecutor arguing facts not in evidence by commenting, "This is a home in which the grass was cut." As previously mentioned, there was testimony that the "grass was taken care of." Thus, the prosecutor's remark was supported by evidence. Accordingly, the remark was not clearly improper.

## 3. DEFENDANT'S GUILT

Defendant also argues that the prosecutor improperly commented on defendant's guilt during closing argument when he stated: "We know that the defendant knowingly possessed the controlled substances that were inside of the Wilshire address. So that's been proven." Prosecutors may not express a personal opinion about a defendant's guilt, *Bahoda*, 448 Mich at 282-283, but their mere use of the words "I believe" and "I think" during closing and rebuttal arguments does not render the arguments improper. See *People v Cowell*, 44 Mich App 623, 628; 205 NW2d 600 (1973).

Viewed in context, the prosecutor's remark did not involve the prosecutor's personal opinion about defendant's guilt, but rather was based on and supported by the evidence and reasonable inferences arising from it as they related to the prosecutor's theory that defendant possessed the marijuana and cocaine found in the Wilshire house. See *Bahoda*, 448 Mich at 282. During closing argument, the prosecutor discussed the elements of the offenses and summarized the evidence before making the concluding remark that it had been proven that defendant knowingly possessed the controlled substances in the Wilshire house. Thus, the prosecutor's remark was made as part of a proper argument explaining why the evidence supported the

possession element of the charged drug offenses. Accordingly, the prosecutor's remark was not plain error.

## C. TRIAL COURT'S INSTRUCTIONS

To the extent that the prosecutor's remarks exceeded the bounds of proper argument, defendant is not entitled to a new trial. In its final instructions, the trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jury was to decide the case only on basis of the properly admitted evidence, that the jury was not be influenced by sympathy or prejudice, and that the jury was to follow the court's instructions. The trial court's instructions were sufficient to dispel any possible prejudice and to protect defendant's substantial rights. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Juries are presumed to follow their instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). Defendant has not presented any basis for overcoming the presumption that the jury followed these instructions.

## D. EFFECTIVE ASSISTANCE OF COUNSEL

Within this issue, defendant also argues that defense counsel was ineffective by failing to object to the unpreserved instances of improper vouching, arguing facts not in evidence, and improperly commenting on defendant's guilt. Again, we disagree. Because defendant failed to raise this ineffective-assistance claim in the trial court in connection with a motion for a new trial or request for an evidentiary hearing, our review is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, defendant must show that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

Because the prosecutor's remarks were not improper, defense counsel's failure to object was not objectively unreasonable. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Further, because the trial court's jury instructions were sufficient to dispel any possible prejudice, the record does not support the contention that a reasonable probability existed that, but for counsel's failure to object, the outcome of defendant's trial would have been different. Therefore, defendant has not established a claim of ineffective assistance of counsel.

## IV. SENTENCING

Next, defendant argues that he is entitled to be resentenced before the judge who presided over his trial. We disagree. The sentencing judge denied defendant's motion to adjourn sentencing until the trial judge was available to sentence defendant. We review a trial court's ruling on a motion for an adjournment for an abuse of discretion. *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000).

"Generally, a defendant should be sentenced by the same judge who presided at [the defendant's] trial, provided that the judge is reasonably available." *People v Pierce*, 158 Mich

App 113, 115; 404 NW2d 230 (1987), citing *People v Clemons*, 407 Mich 939; 291 NW2d 927 (1979). Defendant and plaintiff both agree that the trial judge was unavailable for sentencing because of a medical issue and that she ultimately retired. In the lower court, the sentencing judge explained that it will be "quite a while" before the trial judge would be able to return to the bench because she was "out ill" and "having major surgery." Thus, it is undisputed that the trial judge was not reasonably available to preside over defendant's sentencing proceeding. Further, defendant does not argue that the sentencing judge was uninformed about the case, or was unable to tailor a sentence to fit the circumstances of the case and the offender. See *Pierce*, 158 Mich App at 115-116. Indeed, at both the hearing on defendant's motion to adjourn sentencing and at the sentencing hearing, defense counsel informed the judge about mitigating facts that should be considered at sentencing and justified a downward departure from the sentencing guidelines recommended minimum sentence range. The sentencing judge ultimately imposed a sentence that represented a 24-month downward departure from the guidelines range, noting that it had considered certain facts raised by the defense. Defendant does not contend that his sentence was based on inaccurate information or invalid for some other reason. Thus, defendant has also failed to demonstrate how he was prejudiced by being sentenced by a different judge. Accordingly, we find no abuse of discretion in the sentencing judge's denial of defendant's motion for an adjournment to await the trial judge's unknown return to the bench.

Defendant asserts that, despite the trial judge having retired after a medical issue, the judge might still be "local" and "reasonably available" for resentencing. He argues that under MCL 600.226(1), the judge could be recalled to the bench to resentence him. However, defendant offers no legal authority that would entitle him to have a retired judge be recalled to the bench for the purpose of resentencing him in these circumstances, particularly where there is no indication that the sentencing judge was incapable of imposing a valid sentence and defendant has not otherwise demonstrated any defects with his sentences. Accordingly, defendant is not entitled to be resentenced.

## V. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which have merit.

## A. FRAUD UPON THE COURT

Defendant requests that this Court set aside the search warrant, or remand for an evidentiary hearing, because Officer Morrison perpetrated fraud upon the court by intentionally or recklessly using false information in the affidavit in support of the search warrant. We reject this claim of error.

Preliminarily, in presenting this claim, defendant lists facts that he alleges are false with little to no citation or proper analysis. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). In addition, although defendant requests that this Court remand for an evidentiary hearing on this issue, he fails to mention that the defense raised the very issue of the officer intentionally or recklessly stating false information in the affidavit in support

-10-

of the search warrant in the trial court, and the court held a *Franks*[2] hearing. In sum, defendant fails to properly present this claim, *Kelly*, 231 Mich App at 640-641, and fails to mention that he has already received an evidentiary hearing on this very issue, let alone address the propriety of the trial court's determination that "[t]here hasn't been any evidence here today to definitely say that the statements that are in the search warrant are false." On this record, defendant has not established that the officer perpetrated a fraud on the court, or demonstrated that he is entitled to a remand for an evidentiary hearing. Thus, defendant is not entitled to any relief with respect to this issue.

## B. SUFFICIENCY OF THE EVIDENCE

In his Standard 4 brief, defendant again argues that the evidence was insufficient to support his convictions, rehashing the same arguments regarding his felony-firearm conviction that we addressed in Section I(C), *supra*, and making no specific argument regarding his drug conviction. As explained earlier, the evidence was sufficient to sustain defendant's convictions of possession with intent to deliver 1,000 or more grams of cocaine and felony-firearm.

## C. EFFECTIVE ASSISTANCE OF SUBSTITUTE COUNSEL AT SENTENCING

In his last claim, defendant argues that he was denied his right to counsel because his trial counsel was unable to represent him at sentencing and substitute counsel provided ineffective assistance. We disagree.

Preliminarily, we observe that defendant mischaracterizes the record of the sentencing hearing. Defendant claims that there was a "dispute about representation," that substitute counsel "admitted" that he did not want to represent defendant, and that substitute counsel actually declined to do so. The record does not support these claims. Rather, the record indicates that substitute counsel put his appearance on the record and asked for the trial court's permission to stand in for trial counsel. Nothing in the record supports that substitute counsel was averse to representing defendant. Likewise, nothing in the record supports defendant's claim that he did not want to proceed with substitute counsel. After counsel asked for permission to represent defendant, defendant stated that he "wanted" trial counsel, but after learning that trial counsel was very ill, defendant agreed to the trial court proceeding with sentencing, and added: "Well [substitute counsel's] here." Thus, contrary to how defendant posits this claim, he did not object to being represented by substitute counsel, and counsel was ready and willing to represent defendant.

A criminal defendant who faces incarceration has a constitutional right to counsel at all critical stages of the criminal process. *People v Williams*, 470 Mich 634, 640-641; 683 NW2d 597 (2004). In stating this issue in his Standard 4 brief, defendant implies that he was denied the actual right to counsel at sentencing, but in his argument he appears to argue that substitute counsel provided ineffective assistance because he offered little assistance other than requesting a sentence below the guidelines range. The record belies defendant's claim.

---

[2] *Franks v Delaware*, 438 US 154, 155-156; 98 S Ct 2674; 57 L Ed 2d 667 (1978).

The record demonstrates that substitute counsel clearly understood the case and defendant's circumstances, and vigorously and effectively offered reasons why the court should impose a sentence below the guidelines minimum sentence range. At a prior hearing on defendant's motion to adjourn sentencing, defendant's trial counsel emphasized factors that the defense wanted to be considered for sentencing, including defendant's age, lack of a prior record, letters from his family, his conduct while out on bond, and his appearance at every court date. Substitute counsel argued each of those factors, in addition to highlighting that defendant has been contributing to the community, is a home builder, had significant character references, and had taken this matter very seriously. Counsel also attempted to downplay defendant's offense variable (OV) total by arguing that he was only 100 or 200 grams over the amount required to trigger an additional 100 OV points. Defendant fails to indicate what additional assistance substitute counsel should have been provided, or what additional argument counsel could have made at sentencing. Moreover, consistent with counsel's request, the trial court imposed a sentence that represented a 24-month downward departure from the low end of the sentencing guidelines range, noting factors effectively argued by counsel. Defendant has not demonstrated that he was denied his right to the effective assistance of counsel at sentencing. *Nix*, 301 Mich App at 207.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Jonathan Tukel