*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAROB MAYWAN JACKSON,

        Defendant-Appellant.

UNPUBLISHED
December 09, 2025
8:56 AM

No. 371783
Genesee Circuit Court
LC No. 22-050053-FH

Before: KOROBKIN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by right following his jury convictions on one count of felon-in-possession of a firearm, MCL 750.224f; one count of felon-in-possession of ammunition, MCL 750.224f(6);[1] two counts of possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b(1); and one count of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). Defendant argues that the evidence was insufficient to convict him, that the trial court erred by allowing his mother to exercise her Fifth Amendment right not to testify without assessing the validity of the right, and that his Confrontation Clause rights were violated by the admission of a 911 call. We disagree with defendant's arguments, and therefore affirm.

## I. BACKGROUND AND FACTS

Defendant's ex-girlfriend called 911 after defendant banged on her door and refused to leave her property. She told the dispatcher that defendant was "beatin[g] at the door with a gun," and that defendant had a nine-millimeter handgun. When four Michigan State Police (MSP) troopers responded to the call, they spotted defendant sitting on the porch. Sergeant Jeffrey Duttlinger and Officer Evan Neilson observed defendant turning and reaching toward his

---

[1] MCL 750.224f was amended after defendant's conviction, and the numbering was altered such that felon-in-possession of ammunition was changed from Subsection (6) to (7). See 2023 PA 201. However, the language for this offense remains unchanged.

waistband. Sergeant Duttlinger ordered defendant to stop and show his hands, but defendant ran and the troopers gave chase. Officer Neilson and Officer Nicholas Salski stated that, during the chase, they heard a loud "metal-on-metal" sound as if a metal object had been discarded by defendant. Within about 15 minutes, a K-9 unit located a loaded firearm, which was later determined to be registered to defendant's mother. The gun was found in the engine block of an abandoned car near where Officers Salski and Neilson had heard the sound.

At trial, the prosecution presented the testimony of the four responding troopers, a recording of the 911 call from defendant's ex-girlfriend, and videos from the troopers' body-worn and in-car cameras. Audible knocking could be heard in the background of the 911 call. Body-worn camera footage showed the gun in the abandoned car's engine block even before the K-9 unit located it. Additionally, an MSP firearm and toolmark examiner confirmed that the firearm was operable and that it was not tested for fingerprints or DNA.

Defendant attempted to call his mother, Donna Jackson, as a witness at trial, but, outside the presence of the jury after being advised by her own counsel, she invoked her Fifth Amendment right to not testify. The trial court excused defendant's mother without objection from the defense. After closing statements and deliberation, the jury found defendant guilty on all counts.

Defendant now appeals.

II. ANALYSIS

A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to support the jury's finding that he possessed a firearm. We disagree.

"Challenges to the sufficiency of the evidence are reviewed de novo." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). Appellate courts must "view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended on other grounds 441 Mich 1201 (1992). The prosecution may prove the elements of an offense with "circumstantial evidence and reasonable inferences therefrom." *People v Solmonson*, 261 Mich App 657, 661; 683 NW2d 761 (2004).

"A person is guilty of felony-firearm if the person possesses a firearm during the commission of a felony." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011), citing MCL 750.227b. The elements of felon-in-possession of a firearm are "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016), citing MCL 750.224f. The elements of felon-in-possession of ammunition mirror the elements of felon-in-possession of a firearm but the offense requires the possession of ammunition rather than a firearm. See MCL 750.224f(6).

Here, defendant disputes only whether he possessed a gun. The prosecution may prove possession of a firearm with direct or circumstantial evidence that a defendant had either actual or constructive possession. *People v Minch*, 493 Mich 87, 91; 825 NW2d 560 (2012).

We conclude that the prosecution presented sufficient circumstantial evidence at trial to permit a rational jury to determine that defendant had actual possession of a firearm. In the 911 call, defendant's ex-girlfriend told the dispatcher that he was "beatin[g] at the door with a gun" and that she knew it was a nine-millimeter handgun. Two MSP troopers testified to hearing a "metal-on-metal" sound during the chase, and the firearm was recovered in the same location where they heard this noise about 15 minutes later. Furthermore, even before the gun was recovered, it is visible on body-worn camera footage taken about three minutes after the troopers started chasing defendant.

Defendant argues that the prosecution never submitted the firearm for DNA or fingerprint testing which could have definitively established possession. However, defendant points to no authority showing that DNA, fingerprint, or other forensic testing is necessary to find that a defendant possessed a firearm. Given the circumstantial evidence described, the prosecution presented sufficient evidence for a reasonable jury to determine that defendant possessed a firearm. See *Minch*, 493 Mich at 91.

## B. DEFENDANT'S MOTHER'S INVOCATION OF THE FIFTH AMENDMENT

Defendant argues that the trial court's decision allowing his mother to exercise her Fifth Amendment privilege against self-incrimination without properly determining that the privilege was valid denied defendant his right to present a defense, his right to a fair trial, and his right to confront the witnesses against him. We disagree.

Defendant's arguments are unpreserved because defense counsel did not object to Donna Jackson's invocation of the privilege against self-incrimination or the trial court's decision to excuse her from testifying. This Court reviews an unpreserved claim of constitutional error for plain error affecting substantial rights. *People v Moore*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 371556), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* at 763. To satisfy the third element, a defendant must show "prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* Once a defendant satisfies these requirements, an appellate court may reverse only if the plain error "resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (quotation marks and citation omitted; alterations in original).

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against [themselves] . . . ." US Const, Am V. This privilege applies to one's own criminal proceedings as well as "any other proceeding . . . where the answers might incriminate him in future criminal proceedings." *People v Wyngaard*, 462 Mich 659, 671-672; 614 NW2d 143 (2000), quoting *Minnesota v Murphy*, 465 US 420, 426; 104 S Ct 1136; 79 L Ed 2d 409 (1984) (quotation marks omitted). It protects both "answers that

would in themselves support a conviction, as well as those that would furnish a link in the chain of evidence needed to prosecute the claimant." *People v Goodin*, 257 Mich App 425, 428; 668 NW2d 392 (2003) (quotation marks and citation omitted).

In this case, after making an opening statement, defense counsel called defendant's mother, Donna Jackson, as the defense's first witness. After stating that he needed to retrieve the witness from the hallway, defense counsel asked to approach and the jury was excused. Outside the jury's presence, Donna Jackson's counsel informed the trial court that he had "advised her of her rights under the Fifth Amendment, and she wishes to avail herself of those rights." The trial court responded, "And that would be it . . . so, the record is made." When the jury returned, the trial court explained that sometimes things happen during trial, "and it's important to make a record of [] those instances. And that's what we just did" before prompting defense counsel to call the next witness. Accordingly, defendant's mother did not testify and never took the stand.

We conclude that the trial court did not err when it allowed defendant's mother to invoke her Fifth Amendment right not to testify. We begin with defendant's argument that the decision violated his right to present a defense. A defendant does have a constitutional right to call witnesses in his defense, *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008), but "[a] defendant's right to force a witness to testify must yield to that witness'[s] assertion of his Fifth Amendment privilege against self[-]incrimination, where it is grounded on a reasonable fear of danger of prosecution," *People v Steanhouse*, 313 Mich App 1, 21; 880 NW2d 297 (2015), aff'd in part rev'd in part on other grounds 500 Mich 453 (quotation marks and citation omitted). To determine whether a witness's claim of privilege is valid, a trial court must first "determine whether the witness understands the privilege and must provide an adequate explanation if the witness does not." *Id*. at 18. The court must then "hold an evidentiary hearing outside the jury's presence to determine the validity of the witness'[s] claim of privilege." *Id*. "If the court determines the assertion of the privilege to be valid, the inquiry ends and the witness is excused." *Id*.

In *Steanhouse*, we rejected a defendant's argument that their right to present a defense was violated by a trial court's failure to adequately inquire into whether a witness validly asserted the Fifth Amendment privilege against self-incrimination. *Steanhouse*, 313 Mich App at 16. We also rejected the argument that the trial court erroneously concluded that the witness's privilege was valid. *Id*. In that case, the trial court questioned the witness's counsel, who indicated that they had counseled their client regarding their Fifth Amendment and that the witness decided not to testify. See *id*. at 18-19. The witness's counsel also explained that they had advised the witness not to testify because of "inconsistent statements to the police and possible testimony that [they] were] present when the [offense] occurred." *Id*. at 19. The trial court had also provided defense counsel with the opportunity to question the witness's counsel regarding the witness's intent to invoke their Fifth Amendment privilege but defense counsel did not take advantage of the opportunity. *Id*.

Here, although the trial court did not question defendant's mother or explicitly state that her privilege was legitimate, this level of inquiry is not required. See *Steanhouse*, 313 Mich App at 18-19 (finding that the trial court was not required to "question [the witness] or make an explicit determination on the record concerning the validity of [the witness's] assertion of the privilege against self-incrimination"). Furthermore, because defendant did not object to this determination

-4-

or request additional probing of the propriety of asserting the privilege, "defendant cannot now complain of the trial court's procedure." *Id.* at 19, citing *People v Lawton*, 196 Mich App 341, 346; 492 NW2d 810 (1992).

Moreover, we see no reason to doubt that Donna Jackson legitimately invoked the privilege. To assert the privilege, a witness must have a "reasonable basis . . . to fear incrimination from questions . . . ." *People v Dyer*, 425 Mich 572, 578; 390 NW2d 645 (1986). During the prosecution's case-in-chief, Sergeant Duttlinger had testified that the gun found at the scene was registered in Donna Jackson's name. Even if the trial court erred by failing to ascertain the basis for the invocation of the privilege, any such error was harmless. Given that the gun involved in the offense was registered in the witness's name, the witness had a "reasonable basis . . . to fear incrimination." See *Dyer*, 425 Mich at 578. Put differently, there is no reversible error because the trial court knew that Donna Jackson's attorney had counseled her regarding the privilege and it was "aware of the underlying factual basis" supporting the assertion of the privilege. *Steanhouse*, 313 Mich App at 19; see also *Dyer*, 425 Mich at 579. Defendant offers no argument to the contrary.

We also conclude that the trial court's decision to permit defendant's mother to exercise her Fifth Amendment privilege did not deprive defendant of his right to a fair trial. When a witness invokes the privilege on the stand, they risk both prejudicing the defendant and adding "critical weight . . . to the prosecution's case." *People v Paasche*, 207 Mich App 698, 709; 525 NW2d 914 (1994), citing *People v Poma*, 96 Mich App 726, 733; 294 NW2d 221 (1980) (quotation marks omitted). When such an invocation occurs in the jury's presence, "the validity of the asserted privilege is immaterial because the danger of the adverse inference is present regardless of the legitimacy of the assertion." *Paasche*, 207 Mich App at 709. But we are not faced with a scenario in which defendant's mother asserted the privilege in the jury's presence. Nor was she allowed to take the stand despite the trial court and prosecution's knowledge that she would invoke the privilege. See *Poma*, 96 Mich App at 733. Instead, the jury did not know why she did not testify. Therefore, defendant was not denied a fair trial.

Finally, allowing defendant's mother to assert her privilege against self-incrimination did not deny defendant his right to confront witnesses against him. "When construing a constitutional provision, [courts] must give the words their plain meaning if they are obvious on their face." *Phillips v Mirac, Inc*, 470 Mich 415, 422; 685 NW2d 174 (2004). The Confrontation Clause of the Sixth Amendment ensures a criminal defendant the right "to be confronted with the witnesses *against him*." US Const, Am VI (emphasis added). The plain language of this clause clearly indicates that it applies to adverse witnesses. See also *Crawford v Washington*, 541 US 36, 51; 124 S Ct 1354; 158 L Ed 2d 177 (2004) (noting that the Confrontation Clause applies to witnesses "*against* the accused") (emphasis added). But defendant's mother was not a witness *against* defendant because she was a defense witness. Therefore, her refusal to testify at trial did not violate defendant's rights under the Confrontation Clause.

## C. 911 CALL

Defendant argues that the trial court violated his rights under the Confrontation Clause by admitting the recording of defendant's ex-girlfriend's 911 call. We disagree.

-5-

This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). The trial court's decision to admit evidence "will not be disturbed unless that decision falls outside the range of principled outcomes." *Id*. at 251-252 (quotation marks and citation omitted). "A trial court necessarily abuses its discretion when it makes an error of law." *People v Everett*, 318 Mich App 511, 516; 899 NW2d 94 (2017). This Court reviews de novo questions involving the Confrontation Clause. *People v Nunley*, 491 Mich 686, 696-697; 821 NW2d 642 (2012).

As an initial matter, defendant argues that the statements made in the 911 call were inadmissible hearsay. See MRE 801(c); MRE 802. During the call, defendant's ex-girlfriend requested that police respond to her home, explaining that defendant, her ex-boyfriend, would not leave her house and was "beatin' at the door with a gun." In response to the 911 operator's questions, she provided defendant's name, race, a clothing description, and the type of gun in his possession. The trial court admitted the statements under an exception to the rule against hearsay as a present sense impression, see MRE 803(1), overruling defense counsel's objection to statements indicating that defendant had a gun. These statements were properly admitted under the present sense impression hearsay exception because defendant's ex-girlfriend described what was occurring while the incident was unfolding. See *id.*

Even so, that the statement was admissible under rules of evidence does not insulate it from being challenged as a violation of the Confrontation Clause. *Crawford*, 541 US at 50-51. "The Confrontation Clause of the Sixth Amendment bars the admission of 'testimonial' statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness." *People v Walker*, 273 Mich App 56, 60-61; 728 NW2d 902 (2006), citing *Crawford*, 541 US at 59. A statement is "testimonial when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006). Conversely, a statement is nontestimonial if it was "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id*. Calls made to 911 and the initial interrogation conducted in response are "ordinarily not designed primarily to establis[h] or prov[e] some past fact, but to describe current circumstances requiring police assistance." *Id*. at 827 (quotation marks omitted; alterations in original).

Here, defendant argues that the 911 call was testimonial. We conclude, however, that defendant's ex-girlfriend's statements in the 911 call were nontestimonial because her primary purpose was to seek help with an ongoing emergency. In the call, she spoke in present tense "about events *as they were actually happening*, rather than describ[ing] past events." *Davis*, 547 US at 827 (quotation marks and citation omitted; alteration in original). Not only did defendant's ex-girlfriend describe what was occurring, but audible knocking could be heard in the background of the call, supporting an inference that it was made contemporaneously with the incident. Additionally, the dispatcher's clarifying questions about the location of the emergency and the identity of the perpetrator were not the kind of "interrogations by law enforcement officers [that] fall squarely within [the] class" of testimonial hearsay, *Crawford*, 541 US at 53, nor were they meant to "establish[] the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator," *Davis*, 547 US at 826. Instead, the subsequent questioning was to ensure that

defendant's ex-girlfriend "would be protected from harm while police assistance was secured," *Walker*, 273 Mich App at 64, and "to resolve the present emergency, rather than simply to learn . . . what had happened in the past," *Davis*, 547 US at 826 (emphasis omitted).

As in *Davis*, the ex-girlfriend's statements "were provided over the phone, in an environment that was not tranquil, or even . . . safe." *Id.* at 827. This was not a situation in which, after the danger had passed, the witness was questioned separately in police protection. See *id.* at 831-832 (finding that the statements at issue in the companion case, *Hammon*, were testimonial because they described past events after the threat had passed). Therefore, because the statements were nontestimonial, their admission did not violate defendant's right to confrontation, and the trial court did not abuse its discretion by admitting this evidence.

Affirmed.

/s/ Daniel S. Korobkin
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado